Opinion by Judge SHADUR; Dissent by Judge GRABER.
SHADUR, District Judge:
Folsom State Prison Warden Glenn A. Mueller (“Mueller”) appeals the district court’s order granting habeas corpus relief under 28 U.S.C. § 2254[1] to Folsom prisoner Jeffrey Welton Nunes (“Nunes”). That relief was predicated on Nunes’ claim that he had received ineffective assistance of counsel during the plea bargaining process, and it resulted in a direction to the state (1) to vacate Nunes’ conviction for second degree murder and (2) to reinstate its plea offer of voluntary manslaughter. We agree with the district court that Nunes’ counsel failed to provide constitutionally adequate assistance, but we find that the relief granted should be modified: We remand to the district court for the entry of an order releasing Nunes unless the state offers him the same terms that he would have received under the original plea offer, and then for the conduct of further proceedings consistent with this opinion.

Background

On August 28, 1989 Nunes was charged with one count of murder and three counts of assault with a firearm for the 1988 shooting of a man he found sleeping in his estranged wife’s bedroom. In Nunes’ first trial in 1989 the jury hung on the murder charge but found Nunes guilty of one count of assault with a firearm, one count of personal use of a firearm and two misdemeanor counts of exhibiting a firearm. Nunes was retried on the murder charge in 1990, and that second trial also ended with a hung jury, although the jury did unanimously decide that Nunes was not guilty of first degree murder. In a third trial in 1991 the jury found Nunes guilty of second degree murder and subject to the firearm use enhancement. That conviction was later reversed on appeal because the trial judge had spoken to the deliberating jury outside the presence of Nunes and his attorney.
On July 22, 1993, before Nunes’ fourth trial, the prosecutor made a plea offer to Nunes’ defense attorney Michael Brady (“Brady”) that Nunes plead guilty to voluntary manslaughter, waive all presen-tence credits on that voluntary manslaughter charge and serve a sentence of 11 years. In exchange the prosecutor would drop the second-degree murder charge, the firearm enhancement would be dismissed and Nunes would get full credit for the time he had already served toward his assault conviction. Brady then met with Nunes for just five minutes to discuss the plea offer. Nunes claims that Brady told him incorrectly that he was being offered a 22-year sentence that included the firearm enhancement and waived all presentence credits for the time previously served. Nunes further claims that he asked Brady *998 to clarify the offer, but in the meantime Brady told the prosecutor that Nunes had rejected the plea bargain.
At some point after that meeting and before his trial, Nunes’ mother told him that the actual plea offer was different from what he had thought. Though Nunes tried to reach Brady to clarify the offer, he was unable to do so. It was not until the day the fourth trial began that Nunes was able to talk with Brady — after the offer had already expired. In the fourth trial Nunes was again convicted of second-degree murder and received a 15-years-to-life sentence, with a two-year enhancement for the use of a firearm.
Nunes challenged his conviction on direct appeal and then by a state court petition for a writ of certiorari. There Nunes claimed among other things that Brady had provided ineffective assistance of counsel by failing to inform him fully of the actual terms of the plea offer made by the prosecution. That claim was rejected by the California Court of Appeals, which found it unnecessary to hold an evidentiary hearing because Nunes had not made out a prima facie case for prejudice — “that but for counsel’s deficient performance, the defendant would have accepted the plea bargain.”
After the state courts had rejected his claim, in 1998 Nunes filed a pro se Section 2254 petition in the federal district court for the Eastern District of California.[2] After Mueller answered the petition, the magistrate judge held a two-day evidentia-ry hearing on Nunes’ ineffective assistance claim. On November 20, 2002 the magistrate judge recommended that Nunes’ petition be granted on that ground, concluding that the state court ruling was (1) erroneous and (2) contrary to federal law as clearly established in Strickland v. Washington, 466 U.S. 668, 690-93, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Finding that Nunes had shown both that his counsel’s conduct fell outside the range of professional competence and that he had suffered prejudice as a result, the magistrate judge recommended that the district court grant Nunes’ petition in part and order the state (1) to vacate his second degree murder conviction and (2) to reinstate the plea offer to voluntary manslaughter.
On January 8, 2003 the district court adopted the magistrate judge’s findings and recommendations in full. Mueller filed a timely notice of appeal and moved for a stay pending appeal. On May 20, 2003 a panel of this court issued an order granting the stay and expediting this appeal.
Mueller raises three issues on appeal. First, he contends that the state court’s decision rejecting Nunes’ ineffective assistance claim was not contrary to clearly established law because unless Nunes lost a substantive or procedural right (and Mueller claims he did not), Nunes was not prejudiced by his attorney’s shortcomings. Second, Mueller argues that the state court reasonably applied the Strickland analysis in concluding that Nunes failed to establish that he would have accepted the plea had it been properly communicated to him. Third, Mueller claims that the district court was out of bounds in any event when it ordered the state to give Nunes *999 the same deal that it had offered him before the trial.

Standard of Review

We review the district court’s decision to grant habeas corpus relief de novo (Evanchyk v. Stewart, 340 F.3d 933, 939 (9th Cir.2003)) and its findings of fact for clear error (McClure v. Thompson, 323 F.3d 1233, 1240 (9th Cir.2003)). We may affirm the district court’s decision on any ground supported by the record, even if it differs from the district court’s rationale (Paradis v. Arave, 240 F.3d 1169, 1176-76 (9th Cir.2001)).
Section 2254(d), as revised by the Anti-Terrorism and Effective Death Penalty Act (“AEDPA”),[3] instructs federal courts not to grant a state prisoner’s habeas petition as to claims that a state court “adjudicated on the merits” unless the adjudication (1) “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court” or (2) “was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” Ineffective assistance claims are generally resolved under the first standard, which controls both pure questions of law and mixed questions of law and fact, but the second standard applies to the extent a habeas petition challenges any factual determinations of the state court (Davis v. Woodford, 333 F.3d 982, 990 (9th Cir.2003)).
“Clearly established Federal law,” as used in Section 2254(d)(1), refers to “the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision” (Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003)). As to whether a state court’s decision is “contrary to” clearly established law, that is a function of whether that court either (1) applied the wrong authority or (2) applied the right authority but arrived at a “diametrically different” result despite materially indistinguishable facts (Williams v. Taylor, 529 U.S. 362, 406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Alternatively, the state court would have “unreasonably applied” the law if it identified the right legal principle but applied it in an objectively unreasonable way or if it (unreasonably) extended the law to a context where it should not apply (Alvarado v. Hickman, 316 F.3d 841, 852 (9th Cir.2002), citing Williams, 529 U.S. at 404-06, 120 S.Ct. 1495). It is not enough for us to determine in our independent judgment that the state court decision was incorrect or erroneous — instead the important question is whether the state court’s decision was “objectively unreasonable” (Wiggins v. Smith, - U.S. -, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003)).

Right to Counsel During Plea Bargaining

Strickland v. Washington — the most sensible place to begin evaluating any claim for ineffective assistance of counsel — teaches that the benchmark for assessing such claims must be “whether counsel’s conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result” (466 U.S. at 686, 104 S.Ct. 2052). Defendant must demonstrate (1) “that counsel’s representation fell below an objective standard of reasonableness” and (2) “that there is a reasonable probability that, but for coun *1000 sel’s unprofessional errors, the result of the proceeding would have been different” CWilliams, 529 U.S. at 390-91, 120 S.Ct. 1495, quoting Strickland, 466 U.S. at 688, 694, 104 S.Ct. 2052). And as Wiggins, 123 S.Ct. at 2542, quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052, has reconfirmed:
A reasonable probability is a probability sufficient to undermine confidence in the outcome.
Mueller argues that the state court applied the Strickland test properly and that its conclusion — that Nunes was not prejudiced by his counsel’s poor performance— was not contrary to Supreme Court authority, because no Supreme Court case has ever found prejudice where the criminal defendant received a fair trial despite inadequate counsel. Irrespective of whether Nunes’ counsel met professional standards, Mueller notes correctly that under existing Supreme Court law Nunes cannot claim he was prejudiced if his counsel’s incompetence did not deprive him of a substantive or procedural right (Williams, 529 U.S. at 393, 120 S.Ct. 1495). And Mueller observes (again correctly) that the Constitution does not afford Nunes the right to a plea bargain {Weatherford v. Bursey, 429 U.S. 545, 561, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977)).
But Mueller incorrectly contends that it necessarily follows that Nunes did not lose any substantive or procedural right — and therefore did not suffer any prejudice — when his counsel failed to communicate the plea offer to him accurately. After all, the right that Nunes argues he lost was not the right to a plea bargain as such, but rather the right to counsel’s assistance in making an informed decision once a plea had been put on the table. It has long and clearly been held that criminal defendants are entitled to effective assistance of counsel during all critical stages of the criminal process (Powell v. Alabama, 287 U.S. 45, 57, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Brewer v. Williams, 430 U.S. 387, 398, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977)). And Hill v. Lockhart, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) applied that right (and the corresponding Strickland analysis) “to ineffective-assistance claims arising out of the plea process.”
Mueller claims that the real harm the Supreme Court sought to avoid in Hill arises only where the defendant actually pleads guilty, because in those situations the defendant surrenders his or her right to a fair trial. Mueller argues that a defendant who refuses a plea bargain is not deprived of that right and therefore suffers no prejudice. Mueller’s narrow reading of Hill is not entirely outre, for the opinion there did frame the prejudice inquiry — in the context then at issue — in terms of whether “but for counsel’s errors, [defendant] would not have pleaded guilty and would have insisted on going to trial” (id. at 59, 106 S.Ct. 366). And the Supreme Court has stated elsewhere that “the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial” (United States v. Cronic, 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)).
But “the Sixth Amendment right to effective assistance of counsel guarantees more than the Fifth Amendment right to a fair trial” — it serves to protect the reliability of the entire trial process (United States v. Blaylock, 20 F.3d 1458, 1466 (9th Cir.1994), quoting United States v. Day, 969 F.2d 39, 45 (3d Cir.1992)). Over 70 years ago Powell, 287 U.S. at 57, 53 S.Ct. 55 extended the right to counsel to cover all critical stages of the prosecution and recognized that the period from the arraignment until the beginning of trial *1001 can be “perhaps the most critical period of the proceedings.” As United States v. Ash, 413 U.S. 300, 309-10, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973) has chronicled, the “historical background suggests that the core purpose of the counsel guarantee was to assure ‘Assistance’ at trial,” but the Court has over time recognized the importance of expanding that right because “ ‘Assistance’ would be less than meaningful if it were limited to the formal trial itself.”
During all critical stages of a prosecution, which must include the plea bargaining process, it is counsel’s “dut[y] to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution” {Strickland, 466 U.S. at 688, 104 S.Ct. 2052). Those obligations ensure that the ultimate authority-remains with the defendant “to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal” (Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). Here the right that Nunes claims he lost was not the right to a fair trial or the right to a plea bargain, but the right to participate in the decision as to, and to decide, his own fate — a right also clearly found in Supreme Court law.[4]
Even so, Mueller is correct that the state court ruling was not “contrary to” clearly established Supreme Court law. It followed a California Supreme Court decision (Alvernaz, 2 Cal.4th 924, 8 Cal. Rptr.2d 713, 830 P.2d 747), which sets forth the same requirements as Strickland for demonstrating an ineffective assistance claim in the context of plea bargaining. And the United States Supreme Court has not examined a case whose facts provide sufficient comparability for us to conclude that the result reached by the state court was at odds with established Supreme Court caselaw. We therefore reject the conclusion of the magistrate judge and the district court judge that the state court decision was contrary to clearly established Supreme Court law.
That does not of course end the analysis, for habeas relief can also be granted where the state court unreasonably applied the law or where the factual determination was unreasonable in light of the evidence presented. We now turn our attention to those questions.

Prejudice

We first examine precisely what the state court did:
1. It decided from the record that Nunes failed to make out a prima facie case for ineffective conduct of counsel.
2. It found that an evidentiary hearing was unnecessary and concluded on the record that Nunes could not show he would have accepted the state’s plea offer had his attorney communicated it to him accurately.
3. It held that Nunes’ contentions were meritless “on their face.”
4. It found that materials Nunes included in the record that showed his counsel’s delinquency were “of dubious relevance” and rejected as “simply not *1002 credible” Nunes’ claim that he could not reach his attorney to clarify the plea offer.
5. It also inferred that someone in Nunes’ shoes who was facing a fourth trial would likely choose to go that fourth round rather than accept a plea offer.
And we note that all of that took place despite that court’s having said that it took Nunes’ claims at face value.
We hold that the state court’s rejection of Nunes’ habeas claim is unreasonable under both Sections 2254(d)(1) and (2).[5] Under the AEDPA standard of review, it is entirely appropriate — even necessary — that federal courts ask whether the state court applied correct legal principles (in this case, the Strickland analysis) in an objectively unreasonable way (Williams, 529 U.S. at 404-06, 120 S.Ct. 1495), an inquiry that requires analysis of the state court’s method as well as its result.
In those terms the state court’s decision applied the law to the facts unreasonably because Nunes clearly made out a prima facie case of ineffective assistance of counsel under Strickland. With Nunes’ claims being taken at face value as the state court claimed it had done, the factual scenario was (1) that Nunes’ attorney gave him the wrong information and advice about the state’s plea offer and (2) that if Nunes had instead been informed accurately, he would expressly have taken the bargain.
Those assertions certainly suffice to support an ineffective assistance claim, and there was ample evidence in the record before the state court to support those assertions.[6] With the state court having purported to evaluate Nunes’ claim for sufficiency alone, it should not have required Nunes to prove his claim without affording him an evidentiary hearing — and it surely should not have required Nunes to prove his claim with absolute certainty. Nunes needed only to demonstrate that he had sufficient evidence for a reasonable fact finder to conclude with “reasonable probability” that he would have accepted the plea offer, a probability “sufficient to undermine the result” (Strickland, 466 U.S. at 694, 104 S.Ct. 2052). He met that *1003 burden, and to the extent that the state court demanded more it applied the Strickland test unreasonably. In other words, it was objectively unreasonable for the state court to conclude on the record before it that no reasonable factfinder could believe that Nunes had been prejudiced.
If we rather view the state court’s findings as a factual determination, the outcome there is equally problematic under AEDPA. Its assessment of the evidence went well beyond its self-assigned task of assessing Nunes’ allegations for sufficiency to determine whether Nunes would be entitled to relief. State court findings are generally presumed correct unless they are rebutted by clear and convincing evidence or based on an unreasonable evidentiary foundation (Sections 2254(e)(1) and (d)(2); Gonzalez v. Pliler, 341 F.3d 897, 903 (9th Cir.2003)). But with the state court having refused Nunes an evidentiary hearing, we need not of course defer to the state court’s factual findings — if that is indeed how those stated findings should be characterized — when they were made without such a hearing (Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir.2002); Weaver v. Thompson, 197 F.3d 359, 363 (9th Cir.1999)).[7]
While there may be instances where the state court can determine without a hearing that a criminal defendant’s allegations are entirely without credibility or that the allegations would not justify relief even if proved, that was certainly not the case here (see United States v. Navarro-Garcia, 926 F.2d 818, 822 (9th Cir.1991)). It cannot fairly be said that Nunes’ failure to have approached the trial judge independently with his concerns over the plea bargaining process leads to the conclusion that he would not have accepted the plea offer had he actually received it. To the contrary, it would be unreasonable to require Nunes to have confronted the trial judge on his own to preserve his right to assistance of counsel, when he was after all being represented by a lawyer on whom he was relying to protect his rights. It must be remembered that, as Nunes testified, he had in fact tried to speak to the judge at some earlier time in the proceedings, at which point the judge chastised him for doing so, instructing him that it was his lawyer’s job to speak to the court.
In addition, and quite aside from the state court’s departure from its stated acceptance of Nunes’ version of the facts, that court’s statement that he had failed to show that he would have accepted the plea offer if it had been conveyed to him accurately was an impermissible — and a really speculative — conclusion. It must be remembered that Nunes was approaching his fourth trial on the same crime. Two of the earlier juries were hung in favor of a life sentence, while the third trial resulted in a conviction for second-degree murder that was overturned solely on procedural grounds. Nunes’ strategy at trial had always been to argue that he was guilty of voluntary manslaughter — how then can it be thought that he would prefer risking a guilty verdict on second-degree murder to pleading guilty to voluntary manslaughter? At the very least, it was unreasonable for the state court to have denied Nunes the opportunity for a full and fair hearing on the matter — a hearing later granted by the district court, during which Nunes swore (just as he had stated in his written declaration in the state court proceedings) that he would have accepted the plea offer if it *1004 had been accurately conveyed to him, and explained why that was so.
Because the dissent suggests otherwise, we stress that we do not hold (or even hint) that the state court erred because it evaluated the facts differently than we would have or because it arrived at a different result. Instead the state court’s decision was objectively unreasonable because that court made factual findings (that is, it drew inferences against Nunes where equally valid inferences could have been made in his favor, and it made credibility determinations) when it rather claimed to be determining prima facie sufficiency. By contrast, if the state court had first conducted an evidentiary hearing and had then arrived at the same inferences and credibility determinations, we would not be second-guessing those procedures and results as objectively unreasonable.
Viewed either as a finding of fact or as a determination of law, then, the state court’s determination was objectively unreasonable. Nunes had adduced sufficient evidence to support his allegations that his attorney failed to convey the correct plea bargain and that he suffered prejudice as a result. And because Mueller does not challenge on appeal either the federal district court’s decision to grant an evidentiary hearing in this Section 2254 proceeding[8] or the district court’s factual findings after having done so, we affirm the district court’s determination that Nunes is entitled to habeas relief for his ineffective assistance of counsel claim.

Appropriate Remedy

Mueller further argues that the district court did not have the authority to order specific performance of the original plea offer. He urges that specific performance is available only where the prosecution has abused its discretion (see Bordenkircher v. Hayes, 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)) or where the prosecution breaches its plea agreemenf (Mabry v. Johnson, 467 U.S. 504, 510 n. 11, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984)). According to Mueller, permitting such orders in other instances would run afoul of abstention principles that generally bar federal interference with state criminal proceedings (Moore v. Sims, 442 U.S. 415, 424, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); Younger v. Harris, 401 U.S. 37, 49, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)).
But any such issues can be avoided by the simple expedient of modifying the writ to order Nunes’ release (that is, after all, the classic relief afforded by the writ) within a reasonable time unless the state provides the identical offer it made to Nunes earlier. As Hilton v. Braunskill, 481 U.S. 770, 775, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987) teaches:
Federal habeas practice, as reflected by the decisions of this Court, indicates that a court has broad discretion in condition *1005 ing a judgment granting habeas relief. Federal habeas courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters “as law and justice require.” In construing § 2243 and its predecessors, this Court has repeatedly stated that federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court.
See also the discussion of conditional writs in McQuillion v. Duncan, 253 F.Supp.2d 1131, 1134 (C.D.Cal.2003). That obviates the concerns that Mueller raises and is “tailored to the injury suffered from the constitutional violation” without “unnecessarily infring[ing] on competing interests” (United States v. Morrison, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981)). And it conforms to the Section 2243 directive that the federal habeas court shall “dispose of the matter as law and justice require.”
Conceptually, any habeas remedy “should put the defendant back in the position he would have been in if the Sixth Amendment violation never occurred,” and in some circumstances granting a new trial is not the appropriate remedy to that end (Blaylock, 20 F.3d at 1468). Here as in Blaylock the ineffective assistance occurred before trial, and “the harm consisted in defense counsel’s failure ‘to communicate a plea offer to defendant’ ” (id.). Under such circumstances the constitutional infirmity would justify Nunes’ release, but if the state puts him in the same position he would have been in had he received effective counsel, that would cure the constitutional error (see Phifer v. Warden, United States Penitentiary, 53 F.3d 859, 864-65 (7th Cir.1995)).[9]

Conclusion

Because we agree with the district court that the state court’s decision was an unreasonable application of clearly established Supreme Court law and an unreasonable determination of the facts in light of the evidence before the state court, we AFFIRM the district court’s decision to grant Nunes’ Section 2254 petition because of the ineffective assistance of counsel during the plea bargaining process. We REMAND to the district court with directions to modify its order so as to direct the state to release Nunes within 120 days unless it offers Nunes the same material terms that were contained in its original plea offer. Any further proceedings shall be consistent with this opinion.

. All further citations to Title 28 provisions will simply take the form "Section — ."

. That petition was initially dismissed because it was a mixed petition — it included claims that had not been exhausted in state court. With the help of appointed counsel, Nunes then filed an amended petition raising only exhausted claims, together with a motion to stay proceedings that was granted by the district court. After exhausting his claims in state court, Nunes filed a motion for leave to amend his petition to include those newly exhausted claims. That motion was granted on June 24, 1999.

. Nunes originally filed his habeas petition in 1998, well after AEDPA's 1996 amendments to Section 2254(d) became effective.

. Alternatively we note (and Mueller himself concedes) that California law clearly recognizes the right to effective assistance of counsel during the plea bargaining process {In re Alvernaz, 2 Cal.4th 924, 8 Cal.Rptr.2d 713, 830 P.2d 747 (1992)). While clearly established Supreme Court law provides that coun-sets incompetence must deprive the defendant of a substantive or procedural right to rise to a constitutional violation, it does not require that the federal Constitution be the source of the substantive or procedural right being deprived — indeed, Williams, 529 U.S. at 393, 120 S.Ct. 1495 suggests just the opposite.

. As is evident from our discussion, we reject the magistrate judge’s approach, following Van Tran v. Lindsey, 212 F.3d 1143, 1155 (9th Cir.2000), that a federal court must first determine whether the state court decision was erroneous before applying the AEDPA standard of review. Lockyer, 123 S.Ct. at 1172 has expressly disagreed with that method because "the only question that matters under § 2254(d)(1) [is] whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law.”

. According to the dissent, Alvemaz, 8 Cal. Rptr.2d 713, 830 P.2d at 756 requires that a habeas petitioner must always proffer some evidence other than his or her own statement to state a cognizable claim of ineffective assistance of counsel during the plea bargaining process. But that does not at all support the analytical edifice that the dissent has sought to erect on that foundation, for the situation here — as our text analysis hereafter demonstrates — is that Nunes did present objective corroborative evidence to the state court, but the state court unreasonably rejected it as not credible and hence as unpersuasive. We do observe, however, that the Alvemaz statement of such a universal requirement of corroboration is in substantial tension with Strickland’s discouragement of "mechanical rules” that distract from an inquiry into the fundamental fairness of the proceedings, and with its holding that "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury” (Strickland, 466 U.S. at 695, 104 S.Ct. 2052). But that aside, the state court's unreasonableness runs far deeper — for the state court did not conclude that Nunes failed to produce sufficient evidence, but rather that the evidence Nunes did produce failed to persuade.

. It is particularly unacceptable for that court to have eschewed an evidentiary hearing on the basis that it was accepting Nunes' version of the facts, then to have given the lie to that rationale by discrediting Nunes' credibility and rejecting his assertions.

. Section 2254(c)(2) provides that a habeas petitioner that has "failed to develop the factual basis of a claim in State court proceeding” is not entitled to an evidentiary hearing in federal court except in the circumstances provided in the statute. As Belmontes v. Woodford, 335 F.3d 1024, 1053-54 (9th Cir. 2003), citing Williams v. Taylor, 529 U.S. 420, 429-37, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) states:
A habeas petitioner must meet two conditions to be entitled to an evidentiary hearing: He must (1) allege facts which, if proven, would entitle him to relief, and (2) show that he did not receive a full and fair hearing in a state court, either at the time of the trial or in a collateral proceeding.
Because Mueller does not contend that Nunes actually received a full and fair hearing on his claim or that he failed to develop the factual basis of his claim in state court, we need not explore that issue further.

. It might perhaps be contended that because Nunes had never actually accepted the terms of the original plea offer, we cannot enforce it as a binding contract. While it is true that contract law generally guides the enforcement of plea bargains (United States v. Sar-Avi, 255 F.3d 1163, 1166 (9th Cir.2001)), the remedy we provide stems from Section 2243 and not from contract law.