# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALBINO PEREZ,
     *Petitioner-Appellant,*

v.

TERRY ROSARIO,
     *Respondent-Appellee.*

No. 04-15279

D.C. No.
CV-02-05237-WHA

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

Argued and Submitted December 6, 2004
Submission Deferred December 8, 2005
Resubmitted May 22, 2006
San Francisco, California

Filed May 22, 2006
Amended July 13, 2006

Before: Diarmuid F. O'Scannlain, Robert E. Cowen,* and
Carlos T. Bea, Circuit Judges.

Opinion by Judge O'Scannlain

---

*The Honorable Robert E. Cowen, Senior United States Circuit Judge
for the Third Circuit, sitting by designation.

7773

**COUNSEL**

Kent A. Russell, Russell and Russell, San Francisco, California, argued the cause for the petitioner-appellant and was on the briefs.

Christopher W. Grove, Deputy Attorney General of the State of California, San Francisco, California, argued the cause for the respondent-appellee; Bill Lockyer, Attorney General of the State of California, was on the brief for the respondent-appellee.

**ORDER**

The opinion filed on May 22, 2006 is amended as follows:

Slip Op. 5555. Insert the following footnote after the final paragraph in Part IV:

> Because Perez requested an evidentiary hearing in California state court, he would be entitled to an evidentiary hearing on disputed facts if "(1) he has alleged facts that, if proven, would entitle him to relief, and (2) he did not receive a full and fair evidentiary hearing in state court." *Horton v. Mayle*, 408 F.3d 570, 582 n.6 (9th Cir. 2005). Perez cannot satisfy the first prong of this test. His allegations are incredible; thus he has not alleged facts that if proven would entitle him to relief, but rather has alleged facts that could not be proven at all.

No petition for rehearing or rehearing en banc has been filed, and none will be entertained.

## OPINION

O'SCANNLAIN, Circuit Judge:

In this habeas corpus appeal, we must decide whether an attorney's alleged faulty advice to his criminal defendant client during the plea bargaining process in state court constitutes ineffective assistance of counsel.

I

In 1987 Albino Perez's girlfriend left him for John Hernandez. Perez took a hammer to Hernandez and broke his arm before he was pulled off.

A

Eight years later, Hernandez was driving his Honda Prelude home from running an errand, sometime between 7:00 and 7:30 PM on April 16, 1995, when he observed a dark-colored BMW stopped in the street. When he pulled forward to investigate, he saw Perez in the driver's seat, wearing a blue-knit cap. Perez then pulled out a black semi-automatic handgun. Hernandez sped away while Perez fired several shots. Hernandez escaped unhurt but his car was riddled with bullet holes.

The police searched the area and found ten-millimeter shell casings and a ten-millimeter bullet. They went to Perez's house but were unable to find a BMW there, outside or in the garage. Two days later, they returned with an arrest warrant and found a dark-blue BMW parked in front, which they towed because it would not start. The police also found a ten-millimeter bullet and a blue knit cap in Perez's room. Perez was charged with assault with a deadly weapon.

Perez turned down a plea bargain offer and trial began in September of 1996. John Hernandez testified as the prosecu-

tion's key witness. The prosecution also presented forensic evidence of gun-shot residue in Perez's BMW and had a ballistics expert testify that the markings on the bullet found in Perez's bedroom were similar to those found on the casings at the scene of the shooting. Another expert witness testified that he had examined the BMW and it could have been operable the night of the shooting.

In turn, Perez presented testimony that the BMW in his possession was inoperable during the time of the shooting and called a witness whose testimony provided circumstantial evidence that two unknown Asian men were the real culprits.

The state court jury found Perez guilty of assault with a deadly weapon and other crimes. The trial court eventually found that Perez's previous felonies qualified him for a three-strikes sentence and sentenced him to a prison term of 47 years to life.

## B

In March of 1997, counsel filed a motion for a new trial, based on the testimony of Gilbert Hernandez that John Hernandez, his brother, had admitted that he was not really sure who had shot at him. The trial court rejected the motion because Gilbert, a felon, was not credible.

In October of 1997, counsel then filed a second motion for a new trial, based on testimony from Monico Lopez giving circumstantial evidence that Jose Villanueva was the real shooter. This motion was also denied.

Perez changed attorneys and filed a third motion for a new trial, which was also denied.

## C

Perez then filed an appeal which was ultimately denied. Simultaneously, he petitioned the California Court of Appeal

for a state writ of habeas corpus, claiming ineffective assistance of counsel on numerous grounds. He also submitted various supporting declarations. In one made in 1999, Perez gave his own account ("the first declaration"). He claimed that Jose Villanueva had come to him in prison before the trial and confessed to the shooting but had made him promise not to tell anyone. After the State of California responded that Perez's account did little to show ineffective assistance of counsel, Perez submitted a second declaration. In that declaration Perez added that he had told prior counsel about the Villanueva confession and had planned on testifying about it but prior counsel closed without calling him. Additional declarations were submitted, including one from a man named Jim Ford who said he accompanied Villanueva during his confession and corroborated the account in Perez's first declaration. Perez also sought but ultimately did not receive a declaration from his prior counsel.

The California Court of Appeal found these declarations incredible and denied Perez's habeas petition, including his request for an evidentiary hearing on the various ineffective assistance claims. The Supreme Court of California summarily denied Perez's petition to it.

### D

In due course Perez filed his petition for writ of habeas corpus in the federal district court, which denied it. Perez's timely appeal is now here.

### II

**[1]** As the primary basis for his ineffective assistance of counsel claim, Perez avers that if his counsel had properly advised him that he faced a life-sentence under California's three-strikes law, he would not have rejected the plea bargain. Under the first prong of the ineffective assistance of counsel test found in *Strickland v. Washington*, 466 U.S. 668 (1984),

Perez must show that his prior counsel's advice during the plea bargaining process "fell below an objective standard of reasonableness." *See id.* at 688. In evaluating Perez's claims under this prong, we must indulge, and we must permit the California state courts to indulge, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See id.* at 689.

**[2]** Under the second prong of the *Strickland* test Perez must show that his prior counsel's mistakes resulted in prejudice. Generally, there must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The record shows that, at a pre-trial hearing in July of 1995, the prosecutor mistakenly came to the conclusion that one of Perez's previous convictions did not count as a strike.[1] The trial judge reinforced the error by agreeing with the prosecutor. Based on that error, the prosecutor then offered a plea bargain of fourteen years. In his 1999 declaration, Perez stated that when he and prior counsel went aside immediately thereafter to discuss the bargain, prior counsel failed to inform him that the prosecutor and the judge were mistaken and that Perez really faced a life sentence if convicted because the conviction would be his third strike. Instead, Perez claimed, prior counsel advised him to turn down the plea bargain. Prior counsel felt that fourteen years was too long a sentence for a conviction that was not a third strike. Perez stated that if properly advised that he faced a three-strikes life sentence, he would have taken a few days to think the plea bargain over and then would have accepted it.

The California state court had previously rejected this claim on two grounds. First, it held that Perez's uncorroborated after-the-fact declaration was alone legally insufficient to

---

[1] All parties agree that the prosecutor was wrong.

establish that he would have accepted the plea bargain if offered one.[2] Second, it made a pair of factual findings to which we must ordinarily defer: that prior counsel knew during the preliminary hearing that this conviction could potentially be Perez's third strike, and that he had already formed the strategic intention of challenging the validity of the prior strikes, if the issue arose.

Here, the district court also made two relevant findings of fact: that the prosecutor would have realized his mistake and withdrawn the plea bargain offer while Perez was taking a few days to think it over, and that the state trial judge would have refused to accept the plea, since Perez would have refused to admit guilt.

---

[2]There appears to be some uncertainty in this circuit as to the objective reasonableness of a state court's holding that uncorroborated, after-the-fact avowals are legally insufficient to establish that a petitioner would have accepted a plea bargain. *See, e.g., In re Alvernaz*, 830 P.2d 747, 756 (Cal. 1992) ("[A] defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she would have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence. A contrary holding would lead to an unchecked flow of easily fabricated claims."). On the one hand, *Turner v. Calderon,* 281 F.3d 851 (9th Cir. 2002), made the comparable holding that "Turner's self-serving statement, made years later, that Mr. Ellery told him that 'this was not a death penalty case' is insufficient to establish that Turner was unaware of the potential of a death verdict." *Id.* at 881; *see also United States v. Allen,* 153 F.3d 1037, 1041 (9th Cir. 1998) (citing *Cuppett v. Duckworth,* 8 F.3d 1132, 1139 (7th Cir. 1993) (en banc) ("[S]elf-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded state convictions.")). On the other hand, *Nunes v. Mueller*, 350 F.3d 1045 (9th Cir. 2003), overrode a similar state court action, though in the face of the dissent's vigorous defense of *Alvernaz*, *id.* at 1057-60 (Graber, J., dissenting), the *Nunes* court explained that though it thought the *Alvernaz* holding was probably not objectively reasonable, it was not definitively ruling on the question, *see id.* at 1055 n.6. Here, we do not reach the objective reasonableness issue.

**[3]** Any of these four findings, if sustained, would be enough to warrant denying Perez's claim. Because Perez contests these findings, *see United States v. Howard*, 381 F.3d 873, 879 (9th Cir. 2004) (reminding that evidentiary hearings can be in order "once a petitioner asserts a more detailed claim, about which there are controverted facts"), we will instead consider the unusual legal question presented by this case: whether Perez can validly claim ineffective assistance of counsel when the legal mistake that allegedly denied him effective assistance of counsel in the plea bargaining process was the same mistake that led to his being offered a plea bargain in the first place.

**[4]** We conclude that he cannot. Even if we construe the contested facts in Perez's favor, we are doubtful that it was unreasonable, incompetent, or ineffective for prior counsel to rely in the short-term on the agreement of both the prosecution and the judge that the legal situation was more favorable to his client than he had supposed.

**[5]** We are also persuaded that Perez cannot demonstrate prejudice in the unique circumstances of this case. To prove prejudice in the normal case, a petitioner must only show that but for counsel's bad advice the outcome of the plea bargaining would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 56-59 (1985) (finding prejudice where counsel's bad advice caused petitioner to *accept* a plea bargain); *Nunes v. Mueller*, 350 F.3d 1045, 1052-53 (9th Cir. 2003) (finding prejudice where counsel's bad advice caused petitioner to *reject* a plea bargain). This is not the normal case: the plea bargain offer was made only because of the prosecutor's mistaken belief that Perez's prior convictions were not strikes under California's three strikes law. Perez does not dispute that the prosecution would not have offered the plea bargain at all if it had not been operating under a mistake.

**[6]** Under these unique circumstances, a failure to capitalize on the plea bargain, though outcome determinative, may

not satisfy the prejudice prong of the *Strickland* test. The Supreme Court has identified "situations in which it would be unjust to characterize the likelihood of a different outcome as legitimate 'prejudice.' " *Williams v. Taylor*, 529 U.S. 362, 391-92 (2000), referring to *Lockhart v. Fretwell*, 506 U.S. 364 (1993), which the Court characterized as a case in which "we concluded that, given the overriding interest in fundamental fairness, the likelihood of a different outcome attributable to an incorrect interpretation of the law should be regarded as a potential 'windfall' to the defendant rather than the legitimate 'prejudice' contemplated by our opinion in *Strickland*." *Williams*, 529 U.S. at 392. In *Lockhart*, Fretwell's lawyer had failed to make an objection to the admission of certain evidence when he could have under a then-prevailing Eighth Circuit precedent. 506 U.S. at 366-67. The Eighth Circuit later realized that the precedent was incorrect and overruled it. *Id.* at 368. The Supreme Court concluded that the lawyer's failure to capitalize on the Eighth Circuit's mistake did not prejudice Fretwell, because he had no inherent right to benefit from it. *Id.* at 369-71.

**[7]** Like Fretwell, Perez is also claiming that his attorney should have helped him capitalize on the prosecutor's legal error. Indeed, Perez's case is even less meritorious. The mistaken interpretation of law from which Perez could have benefitted did not have the dignity of a formal legal ruling, let alone one from a federal court of appeals. The real possibility that the prosecutor would have realized his mistake and retracted the plea bargain before Perez was able to accept it also makes this case even more compelling than *Lockhart*. It should follow that because Perez has no intrinsic right to have legal errors made in his behalf, in rejecting the plea bargain Perez was simply not "deprived . . . of any substantive or procedural right to which the law entitled him." *Williams*, 529 U.S. at 392-93. Since Perez was not entitled to a plea bargain offer made on mistaken legal assumptions, it should follow that any attorney ineffectiveness that led him to reject the plea bargain did not prejudice him.

**[8]** We have never specifically addressed whether a plea bargain offer made on false legal assumptions would be controlled by *Lockhart*, but we have relied on *Lockhart* in many contexts. *See, e.g., United States v. Recio*, 371 F.3d 1093, 1109 (9th Cir. 2004) (denying an ineffective assistance of counsel claim where counsel failed to object to a jury instruction that would have then been considered faulty but had since been rehabilitated). However, prior counsel may have erred during the plea bargaining process and regardless whether prior counsel's errors caused his client to turn down the plea bargain, Perez did not suffer any prejudice.

## III

Perez makes three other specific allegations of attorney incompetence. He alleges that his prior counsel (1) failed to interview and to call witnesses who could testify that Jose Villanueva was the real shooter, (2) failed to introduce evidence showing that Rick Adams, who lived in the neighborhood, owned a dark-colored BMW which was loaned to Villanueva at the time of the shooting, and (3) prevented him from testifying that Jose Villanueva had confessed to the shooting.

## A

The common factual basis of these claims is found in Perez's two declarations, and in supporting declarations from Jim Ford and Rick Adams. In his first declaration, made in 1999, Perez stated that in June of *1995* Jose Villanueva and Jim Ford visited him in jail. Villanueva there (1) confessed that he had done the shooting, (2) described meeting Monico Lopez just prior to it, showing him the gun, and telling Lopez that he, Villanueva, was going to "handle his business", (3) apparently revealed that he had been driving the dark-colored BMW belonging to Rick Adams at the time, and (4) asked Perez for a year's silence. Perez stated that he promised the year's silence. Perez then stated "I told my lawyer . . . that I

knew who the shooter was and that he had asked me for a year. I also told [him] that I would testify to this if . . . Villanueva did not come forward in time. I was willing to testify after the year went by, and had I testified, I would have brought this up. However, my [lawyer] never prepared me to take the stand and never called me to testify . . . ." On the basis of this last testimony, Perez explained that he was entitled to relief because his prior counsel had failed to "obtain [his] informed consent to waiving his right to testify in his own defense."

The State of California responded that Perez's testimony did not establish that he had told his counsel Villanueva's name, or the substance of his confession, or anything else that would have plausibly required prior counsel to make any further investigations, and that attorneys were not required to obtain informed consent.

In his second declaration, made in 2000, Perez stated that in June of *1996* Jose Villanueva came to visit Perez in jail along with Jim Ford and confessed. Perez again stated that he informed prior counsel that he knew the shooter but had promised to wait a year. Perez then stated, for the first time, that a few weeks later he found out Jose Villanueva had died, at which time Perez had given his prior counsel full details of the confession and asked to testify. Prior counsel allegedly tried to dissuade him because prior counsel thought the testimony would " 'upset the judge' . . . who was [otherwise] favorable because she was against the 3-strikes law." According to his second declaration, Perez insisted on testifying and prior counsel apparently assented. But at trial, prior counsel rested without calling Perez to the stand. Perez was "shocked and upset." Eventually, Perez added, because of prior counsel's refusal to follow up on the Villanueva story, Perez switched attorneys.

In Jim Ford's supporting declaration, he stated that he had read Perez's first account of the Villanueva confession and

that it was accurate. In Rick Adams's supporting declaration, he stated that he had lent his dark-colored BMW to Jose Villanueva on the day of the shooting.

### B

Without holding an evidentiary hearing, the California Court of Appeal rejected all three ineffective assistance claims as not credible, especially as to the additional details mentioned for the first time in Perez's second declaration. The California court found Perez's counsel had not been told about the Jose Villanueva confession and Perez had never demanded that he be allowed to testify.

### 1

**[9]** These state court findings of fact are presumed correct by 28 U.S.C. § 2254(e)(1), unless they can be rebutted by clear and convincing evidence. *See Taylor v. Maddox*, 366 F.3d 992,1000 (9th Cir. 2004). Such evidence is not in the record. The only evidence that Perez told his prior counsel about the alleged Jose Villanueva episode, or that Perez insisted on testifying, is Perez's unsupported statement, offered four years after the trial in response to a state habeas filing which pointed out that Perez's first version of the episode strongly implied that Perez had not told his prior counsel about Jose Villanueva or insisted on testifying.

State court findings of fact are not presumed correct, however, by 28 U.S.C. § 2254(e)(1), where "there was an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1); *see Taylor v. Maddox*, 366 F.3d at 1000. In many circumstances, a state court's determination of the facts without an evidentiary hearing creates a presumption of unreasonableness. *Id.* at 1001. We do not read *Maddox* or AEDPA to require an evidentiary hearing in all circumstances.

**[10]** Decisions as to the reasonableness of requiring an evidentiary hearing must "appropriately accommodate concerns of . . . judicial economy . . . ." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 8 (1992) (explaining the Court's reasons for restricting the circumstances in which an evidentiary hearing would be required in district court). Such concern for judicial economy underlies the statutes and precedents holding that evidentiary hearings and similar judicial processes are unnecessary in the unusual case where the allegations to be proven at the hearing are extremely unlikely. In the typical formulations, they are unnecessary where the allegations are said to be incredible in light of the record, or, which is much the same thing, when the record already before the court is said to establish a fact conclusively. *See, e.g., Davis v. Woodford*, 384 F.3d 628, 644, 646-47 (9th Cir. 2004) (in a § 2254 case, holding that a district court did not err in denying an evidentiary hearing to establish petitioner's incompetence during the state trial when "we cannot glean evidence from the record to support actual incompetence" and petitioner's proffered evidence was flimsy); *Downs v. Hoyt*, 232 F.3d 1031, 1041 (9th Cir. 2000) (affirming the district court's denial of an evidentiary hearing in a § 2254 case where the district court had allowed a year of discovery, *citing Cardwell v. Greene*, 152 F.3d 331, 338-39 (4th Cir. 1998) ("We have long held that the need for an evidentiary hearing may be obviated by . . . expansion of the record")).**³** We are satisfied that state court fact determinations

---

**³**These instances are representative of many others. *See, e.g.,* 28 U.S.C. § 2255 (requiring federal district courts to consider collateral attacks on federal sentences unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); *Blackledge v. Allison*, 431 U.S. 63, 76 (1977) (permitting summary dismissal of habeas petitions from state prisoners where the claims in the petition are "palpably incredible" or "patently frivolous or false" (citation omitted)); *United States v. Howard*, 381 F.3d 873, 879 (9th Cir. 2004) ("When a § 2255 petitioner's claim of incompetence due to the ingestion of drugs is conclusory or *inherently incredible*, a district court has the discretion to dismiss the petition without a hearing." (emphasis added)); *United States v. Angulo*, 4 F.3d 843, 847 (9th Cir. 1993) ("An evidentiary hearing is not

are reasonable without an evidentiary hearing, as here, where the record conclusively establishes a fact or where petitioner's factual allegations are entirely without credibility. *See Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003) (acknowledging that "there may be instances where the state court can determine without a hearing that a criminal defendant's allegations are entirely without credibility"). Where there is no likelihood that an evidentiary hearing would have affected the determination of the state court, its failure to hold one does not make such determination unreasonable.

2

We review the record to see whether Perez's account—that Jose Villanueva confessed to him, and, especially, that Perez then told his attorney and demanded to be put on the stand— is so incredible that there is no likelihood that an evidentiary hearing would have produced evidence affecting the state court determination. At trial, Perez's counsel did not attempt to implicate Jose Villanueva, but did introduce evidence that two other men committed the offense. Indeed, defense counsel tried to show that Perez could not have committed the crime and offered, in an attempt to put the blame elsewhere, a witness who offered circumstantial evidence strongly implicating two unknown Asian males. The witness testified that on the evening in question, while he was walking near the area where the shooting occurred, a BMW with two Asian men, one of whom was wearing a knit cap, drove by. It was followed by a Honda Prelude. Moments later, he heard gunshots from the direction the cars had driven.

---

mandated *every* time there is an allegation of jury misconduct or bias. . . . the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source." (citation omitted)); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (in a § 2254 case, holding that "[a] petitioner is not entitled to an evidentiary hearing . . . when his claims are . . . contentions that in the face of the record are wholly incredible.").

After trial, the defense filed a motion for a new trial based on Monico Lopez's declaration implicating Jose Villanueva. Again no mention was made of Jose Villanueva's purported confession to Perez, nor Jim Ford's corroboration of that confession. Perez does not explain why prior counsel would have forgone corroborating Monico Lopez's account with Perez's story at this point.

3

Nor did Perez's new attorney mention the Villanueva confession. In his third motion for a new trial, the new attorney presented a variety of evidence to indicate that John Hernandez was uncertain about the identity of the shooter, along with a statement from Monico Lopez again suggesting that the shooter was really Jose Villanueva. Yet the new attorney also did not offer into evidence Perez's statement that Villanueva confessed to him, or Jim Ford's corroboration, or Rick Adams's statement that he had loaned a dark-colored BMW to Villanueva. All this after Perez had just switched attorneys because his prior counsel had dropped the ball on Villanueva. We must then either believe that *both* Perez's prior counsel *and* his new attorney were sublimely incompetent, and that Perez did nothing to protest, or we must inevitably conclude that Perez's account is not credible.

The Perez declarations were made well after the events they purport to describe, as much as five years. They describe rather outrageous conduct on the part of prior counsel, for the first time. All of the testimony implicating Jose Villanueva dates to well after his death in 1995 or 1996. In his first declaration, Perez has Villanueva not only confessing to the shooting but going out of his way to mention his encounter with Monico Lopez just prior to it. According to Perez, Villanueva described the encounter in terms that happen to track Monico Lopez's testimony extraordinarily closely. Monico Lopez had declared that on the evening of the shooting Jose Villanueva was driving a dark-colored BMW, pulled up next to him,

showed him a semi-automatic handgun, indicated that he was going to "handle" someone he had seen in the area where the shooting would occur, and invited Lopez to come along, which invitation Lopez declined. Perez described Villanueva as mentioning that he had pulled up next to Lopez, told him he was going to "handle his business" in the area where the shooting would occur, and invited Lopez to come along, which invitation Lopez declined.

Additionally, the first declaration strongly suggested that Perez did not tell his prior counsel Villanueva's name and the details of his alleged confession: "I told my lawyer . . . that I knew who the shooter was and that he had asked me for a year. I also told [my lawyer] that I would testify to this if . . . Villanueva did not come forward in time. I was willing to testify after the year went by, and had I testified, I would have brought this up." When the State of California used this point in one of its state habeas briefs, Perez submitted a second declaration in which he asserted that he indeed told his prior counsel all the details, albeit in a different conversation. (Perez did not contest the state's assertion that in the initial conversation Perez told his counsel he knew who the shooter was without letting counsel know the shooter's identity).

In his second declaration, Perez asserted that the latter conversation occurred a few weeks after the first. In his first declaration, Perez does not mention the latter conversation at all, or any change in his willingness to testify. Instead, he simply states that "I was willing to testify after the year went by." But in his second declaration, Perez relates that a few weeks after the initial conversation with his attorney, he found out that Villanueva was dead, promptly went to his attorney, revealed everything, and quarreled with his attorney about whether he should testify or not. The omission from the first declaration of all this information, if it were true, is startling.

4

In his first declaration Perez said that Villanueva came to see him in June of 1995. In the second declaration Perez said

that Villanueva came in June of 1996. If we are to believe the first declaration, then Perez was allegedly informed of Jose Villanueva's confession before his plea bargain hearing in July of 1995. Yet Perez would have us believe that, despite hearing Jose Villanueva's confession and his promise to confess publicly in a year, Perez would have accepted a plea bargain offer of 14 years in prison. If we are to believe the second declaration, then Perez is in the position of, just two months before trial, promising Villanueva to wait a year before making any statements and telling his attorney he'll be happy to testify himself if Villanueva has not come forward within the year.

Perez's first declaration gives no indication that his prior counsel kept him from the stand against his will. Yet when the State of California emphasized this point in its response brief in the state habeas proceedings, Perez's second declaration described for the first time the argument with prior counsel and the behavior by counsel in keeping him from the stand that "shocked and upset" him (but not enough, apparently, to have included it in the first declaration).

5

In his first declaration Perez suggested that he did not take an active role in insisting that he be put on the stand: "I was willing to testify after the year went by, and had I testified, I would have brought this up. However, my [lawyer] never prepared me to take the stand and never called me to testify . . . ." Indeed, in the accompanying habeas petition, Perez merely alleged that his prior counsel had failed to obtain his *informed* consent before not having him testify. But in his second declaration, Perez recounted insisting that he be allowed to testify: "I responded to [prior counsel] that I needed to tell the judge the truth, and insisted that I wanted to testify, and that if it would make the judge angry, so be it." Perez stated that his attorney finally seemed to assent.

In his second declaration, Perez explained that he insisted on testifying and was "shocked and upset" when his attorney did not call him to the stand. Yet in a letter written to the trial judge after the trial, Perez indicated that his decision not to testify was voluntary. There is no hint of shock or upset. "Be-live [sic] me," Perez wrote, "I wanted to take the stand but was advised not to."

**[11]** Each of these numerous reasons for discrediting the story of Villanueva's confession, and especially of Perez's subsequent interactions with his attorney, is by itself telling. Combined, they make his story entirely doubtful. We therefore confidently defer to the California court's finding, without evidentiary hearing, that Perez's account is incredible.

IV

Perez also urges that the district court erred in failing to grant an evidentiary hearing.[4] We review for abuse of discretion. *Villafuerte v. Stewart*, 111 F.3d 616, 633 (9th Cir. 1997). That discretion, however, is constrained. Congress has specified circumstances in which a district court may not hold an evidentiary hearing. 28 U.S.C. § 2254(e)(2) (stating that, with exceptions, "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim"). There are also judicially created constraints. *See Townsend v. Sain*, 372 U.S. 293 (1963) (listing circumstances in which district courts should generally hold an evidentiary hearing).

**[12]** Perez requested evidentiary hearings in the state court; the district court was thus not barred from conducting a hearing. *See Baja v. Ducharme*, 187 F.3d 1075, 1078-79 (9th Cir.

---

[4]Even though deference was owed to the state court's findings of facts, a federal evidentiary hearing could still be held to see if those findings could be overcome by clear and convincing proof. *See* 28 U.S.C. § 2254(e)(1).

1999). Nor was it required to grant one. Where a state court has already made the relevant findings of fact, district court evidentiary hearings would have no purpose if not to produce new evidence possibly contradicting those state court findings. Perez's allegations were still entirely incredible, and no further showings were made to suggest any real possibility of such a contradiction. The district court could not have abused its discretion in denying the request for an evidentiary hearing where, as here, clear and convincing proof was required. *See Davis*, 384 F.3d at 644, 646-47; *Downs*, 232 F.3d at1041 (9th Cir. 2000) (affirming the district court's denial of a § 2254 evidentiary hearing request where the district court had allowed a year of discovery); *see also Tejada*, 941 F.2d at 1559 (upholding a district court refusal to conduct a § 2254 evidentiary hearing in part because "[a] petitioner is not entitled to an evidentiary hearing . . . when his claims are . . . contentions that in the face of the record are wholly incredible.").**5**

V

**[13]** The judgment of the district court denying Perez's petition for writ of habeas corpus is, therefore,

**AFFIRMED.**6

---

**5**Because Perez requested an evidentiary hearing in California state court, he would be entitled to an evidentiary hearing on disputed facts if "(1) he has alleged facts that, if proven, would entitle him to relief, and (2) he did not receive a full and fair evidentiary hearing in state court." *Horton v. Mayle*, 408 F.3d 570, 582 n.6 (9th Cir. 2005). Perez cannot satisfy the first prong of this test. His allegations are incredible; thus he has not alleged facts that if proven would entitle him to relief, but rather has alleged facts that could not be proven at all.

**6**Perez's other claims are addressed in a memorandum disposition filed concurrently herewith.