David DUHAIME, Petitioner–Appellant,

v.

Kenneth DUCHARME, Respondent–
Appellee.

No. 98–36073.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 13, 1999.

Filed Oct. 12, 1999.

Amended Jan. 10, 2000.

Michael Kahrs, Seattle, Washington, for the petitioner-appellant.

Donna H. Mullen, Assistant Attorney General, Olympia, Washington, for the respondent-appellee.

Before: GOODWIN and SCHROEDER, Circuit Judges, and SCHWARZER,[1] Senior District Judge.

## ORDER

The opinion filed October 12, 1999, slip op. 12555, is amended as follows:

Slip op. at 12561, heading [1]: Delete entire paragraph beginning with "This court, however, ...." and replace with:

This court, however, has held that, because of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue. *Moore v. Calderon*, 108 F.3d 261, 264 (9th Cir.1997). Rather, the writ will issue only when the state court decision is "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). This does not mean that Ninth Circuit caselaw is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an "unreasonable application" of Supreme Court law, and also may help us determine what law is "clearly established." *See MacFarlane v. Walter*, 179 F.3d 1131, 1139 (9th Cir.1999) (looking to Ninth Circuit caselaw to confirm that Supreme Court case clearly establishes a legal rule); citing *O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir.1998) (holding that "to the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness *vel non* of the state court's treatment of the contested issue"). Although our cases do not address in detail the exact arguments posed by Duhaime, they implicitly reject the argument that § 2254's rule directing us to look to Supreme Court law when deciding habeas petitions is unconstitutional under stare decisis principles and Article III, and that such an application runs counter to congressional intent and would disrupt judicial efficiency. *See Moore v. Calderon*, 108 F.3d 261; *Furman v. Wood*, 190 F.3d 1002 (9th Cir.1999).

Slip op. 12565, heading [4]: Delete entire paragraph beginning with "However, because the Court ...." and replace with the following:

Although the Ninth Circuit has interpreted the reasoning in *Solem* (that life without parole is a much more severe penalty than life with the possibility of parole) to be applicable to *Jackson*, our reasoning in that case involved a substantial extension of Supreme Court precedent. First, our decision in *Robtoy* relied solely on a Ninth Circuit case for the proposition that *Jackson* was not limited to the death penalty context. *See Robtoy*, 871 F.2d at 1478. This extension was clearly a new rule, particularly in light of the fact that *Jackson* itself did not strike down the life without parole provisions of the federal kidnapping statute. *Jackson*, 390 U.S. at 585–86, 88 S.Ct. 1209. Second, we extended *Solem*, which specifically limited its holding to the circumstances before it and the Eighth Amendment. *See* 463 U.S. 277, 297 n. 24, 103 S.Ct. 3001, 77 L.Ed.2d 637 (stating that Court does not

---

**1.** The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

raise general validity of life sentences without parole, but only considers issue before it, which is "whether, in the circumstances of [the] case and in light of the constitutional principal of proportionality, the sentence imposed on [the] petitioner violates the Eighth Amendment"). In spite of this limitation, we applied *Solem* to a case involving penalties for the exercise of constitutional rights generally. While we do not mean to suggest that the decision in *Robtoy* was erroneous, that decision is not enough, in itself, to establish that a contrary rule would constitute an "unreasonable application of clearly established federal law as determined by the Supreme Court."

With the opinion thus amended, the panel has voted unanimously to deny the petition for rehearing. Judge Schroeder has voted to deny the petition for rehearing en banc, and Judges Goodwin and Schwarzer recommended denial.

The full court has been advised of the petition for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R.App. P. 35.

The petition for rehearing is DENIED and the petition for rehearing en banc is DENIED.

## OPINION

GOODWIN, Circuit Judge:

Washington state prisoner David Duhaime appeals the district court's denial of his 28 U.S.C. § 2254 habeas petition, challenging his sentence of life imprisonment without the possibility of parole imposed pursuant to the former aggravated murder death penalty law RCW § 10.94.010 et seq.

2. A defendant who pleaded not guilty but was later convicted after a jury trial could not be sentenced to death under the Washington aggravated murder death penalty statute, because the Washington Supreme Court in

## I. FACTS & PROCEDURAL HISTORY

In 1979, David Duhaime was convicted of kidnapping, rape, premeditated murder, and robbery in the first degree while armed with a deadly weapon and firearm, as proscribed by RCW §§ 9A.40.020, 9.79.170, 9A.32.030(1)(a) & 9A.56.200 respectively. Duhaime received a maximum term of fifty years on each of the kidnapping and robbery convictions, life imprisonment with the possibility of parole on the rape conviction, and life imprisonment without the possibility of parole on the murder conviction. The kidnapping and robbery sentences were imposed concurrently, but were to run consecutively to the rape and murder life terms.

On February 15, 1980, Duhaime filed an appeal with the Washington Court of Appeals. While the appeal was pending, Duhaime moved to transfer his case to the Washington Supreme Court, on the ground that his case presented two issues already pending in the state supreme court in *State v. Grisby*, No. 45750–6. Although the court of appeals denied that motion, it did stay Duhaime's case pending the resolution of *State v. Frampton*, 95 Wash.2d 469, 627 P.2d 922 (1981). After the supreme court decided *Frampton*, the court of appeals denied his petition on May 6, 1982.

On April 21, 1997, Duhaime filed a habeas petition, presenting the following ground for relief: that applying the former aggravated murder death penalty statute violated Duhaime's right to a jury trial and equal protection because it unfairly enticed a defendant to plead guilty (by offering a maximum sentence of life with the possibility of parole for a guilty plea), and penalized a defendant who was convicted after pleading not guilty (by allowing for a sentence of life without the possibility of parole).[2] Duhaime moved for summary

*Frampton* held that such a penalty would be unconstitutional, in light of the fact that only those defendants who chose to go to trial could be sentenced to death. *State of Wash-*

judgment, but the district denied that motion and Duhaime's petition with prejudice.

On August 21, 1998, Duhaime appealed to this court from the district court's judgment,[3] and on October 22, 1998, the district court granted Duhaime's request for a certificate of appealability on the following issues: (1) the proper scope of review of a petition for habeas corpus under 28 U.S.C. § 2254(d)(1); and (2) whether, under that standard, Duhaime can establish that the Washington State sentencing scheme under which he was sentenced to life without the possibility of parole violated his federal constitutional rights.

## II. STANDARD OF REVIEW

■ The district court's decision to grant or deny a § 2254 habeas petition is reviewed de novo. *Eslaminia v. White,* 136 F.3d 1234,1236 (9th Cir.1998).

Federal habeas petitions filed on or after April 24, 1996 are subject to the standard of review contained in 28 U.S.C. § 2254(d), which provides that writs are not to be granted unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

## III. DISCUSSION

1. *Source of Law in Evaluating Habeas Petitions*

Duhaime contends that the district court erred by ignoring this court's previous ju-

risprudence and by relying solely on Supreme Court precedent, pursuant to § 2254(d)(1), in evaluating his habeas petition.[4] By applying that standard of review, Duhaime asserts that the district court violated the principles of stare decisis and Article III of the Constitution, and that such a removal of Article III jurisdiction was not intended by Congress, and would have "draconian implications on federal judicial efficiency and administration."

■ This court, however, has held that, because of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue. *Moore v. Calderon,* 108 F.3d 261, 264 (9th Cir. 1997). Rather, the writ will issue only when the state court decision is "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). This does not mean that Ninth Circuit caselaw is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an "unreasonable application" of Supreme Court law, and also may help us determine what law is "clearly established." *See MacFarlane v. Walter,* 179 F.3d 1131, 1139 (9th Cir.1999) (looking to Ninth Circuit caselaw to confirm that Supreme Court case clearly establishes a legal rule); citing *O'Brien v. Dubois,* 145 F.3d 16, 25 (1st Cir.1998) (holding that "to the extent that inferior federal courts have decided factually similar cases, reference to those deci-

*ington v. Frampton,* 95 Wash.2d 469, 627 P.2d 922 (1981).

**3.** Because this petition was filed after April 24, 1996, it is governed by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy,* 521 U.S. 320, 336–38, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

**4.** The district court, in adopting the Magistrate Judge's Report, held that the court was bound by the amended version of § 2254(d) and could not impose its own reasoning, as it did in *Robtoy v. Kincheloe,* 871 F.2d 1478 (9th Cir.1989), to declare RCW 10.94.010 et seq. unconstitutional. Instead, the court was required to apply only clearly established Supreme Court precedent in making its decision.

sions is appropriate in assessing the reasonableness *vel non* of the state court's treatment of the contested issue"). Although our cases do not address in detail the exact arguments posed by Duhaime, they implicitly reject the argument that § 2254's rule directing us to look to Supreme Court law when deciding habeas petitions is unconstitutional under stare decisis principles and Article III, and that such an application runs counter to congressional intent and would disrupt judicial efficiency. *See Moore,* 108 F.3d 261; *Furman v. Wood,* 190 F.3d 1002 (9th Cir. 1999).

Further, while the Supreme Court has not decided the specifically presented issue, it has refused to reverse decisions from other circuits on the ground that upholding § 2254(d)(1) would unconstitutionally prohibit Article III courts from determining how they should function and from executing their responsibilities. *See, e.g., Green v. French,* 143 F.3d 865, 874–75 (4th Cir.1998) (holding that § 2254(d)(1) does not unconstitutionally limit inferior federal courts' independent interpretive authority to determine meaning of federal law in any Article III case or controversy), *cert. denied,* — U.S. —, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999); *Lindh v. Murphy,* 96 F.3d 856, 867–70 (7th Cir.1996) (same) (en banc), *rev'd on other grounds,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Section 2254(d) merely limits the source of clearly established law that the Article III court may consider, and that limitation serves to govern prospectively classes of habeas cases rather than offend the court's authority to interpret the governing law and to determine the outcome in any pending case. *Green,* 143 F.3d at 874 (rejecting argument that AEDPA amendments violate "separation of powers by vesting federal courts with jurisdiction

to decide disputes and then dictating the judiciary's determination of governing law") (quotation omitted).[5] Thus, § 2254(d)(1) does not suffer from any Article III constitutional infirmities, as alleged by Duhaime.

■ Hence, the district court did not err in relying solely on Supreme Court precedent in evaluating Duhaime's habeas petition pursuant to § 2254(d)(1).

2. *The State Court's Decision Was Not Contrary To, Or An Unreasonable Application Of, Clearly Established Federal Law.*

■ Duhaime contends that even if the district court was not bound to follow *Robtoy* and other Ninth Circuit precedent, it still erred in denying him relief, because the state court's decision-that the former Washington aggravated murder death penalty law was constitutional-was contrary to, and involved an unreasonable application of, clearly established Supreme Court precedent. In *United States v. Jackson,* the Supreme Court held that a sentencing scheme can be unconstitutional when it has a chilling effect on the defendant's right to plead not guilty under the Fifth Amendment and his right to a jury trial under the Sixth Amendment. 390 U.S. 570, 583, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). In *Jackson,* the Court held that the sentencing provision under the Federal Kidnapping Act which provides that a defendant who pleads guilty cannot be executed but allows for a death sentence if the jury finds him guilty after trial was "patently unconstitutional," because it needlessly penalized a defendant who asserted his constitutional rights to plead not guilty and go to trial. Because RCW 10.94.010 et seq. also appears to entice a defendant to plead guilty so that he can avoid a more severe

**5.** Duhaime relies primarily on a line of cases, originating from *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), which provides that it is the "province of the judicial department to say what the law is." *Id.* at 177; *see, e.g., Plaut v. Spendthrift Farm, Inc.,*

514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995); *Yakus v. United States,* 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944); *United States v. Klein,* 80 U.S. (13 Wall) 128, 20 L.Ed. 519 (1871).

penalty, i.e., life without the possibility of parole, Duhaime asserts that such a statute imposes an unconstitutional burden on his Fifth and Sixth Amendment rights. *See Solem v. Helm,* 463 U.S. 277, 297, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (stating that sentence of life without possibility of parole was far more severe than life sentence with possibility of parole in context of Eighth Amendment). While it may be doubted that an innocent defendant would plead guilty and accept a life sentence to avoid the risk of trial and life without parole, *Solem* does take Duhaime's point out of the realm of fantasy.

The State, on the other hand, argues that *Jackson* goes only so far as to prohibit a sentencing scheme that induces a defendant to plead guilty to avoid a possible death sentence, and sheds no light on the constitutionality of a scheme in which the defendant is induced to plead guilty to avoid a sentence of life without the possibility of parole. The *Jackson* court expressly upheld the remaining portions of the Kidnapping Act, which presumably allow for a life sentence without the possibility of parole. *Id.* at 585–86, 88 S.Ct. 1209. The State also contends that the state court did not err in adopting the logic of the *Frampton* court, which concluded that a life sentence without the possibility of parole was not sufficiently different from a life sentence with the possibility of parole so as to impermissibly encourage a defendant to plead guilty to guarantee the lighter sentence. 95 Wash.2d at 528–30, 627 P.2d 922. This point may be debatable, but the question before us is whether we are at liberty to debate it.

Duhaime responds that the district court and the State misinterpreted what constitutes "clearly established" law and, instead, should have evaluated the facts consistently with the legal principles set forth in both *Jackson* and *Solem* to conclude that the state court decision was in conflict with those principles. *See MacFarlane v. Walter,* 179 F.3d 1131, 1139 (9th Cir.1999) (stating that although Supreme Court has not defined "clearly established" law in AEDPA context, the Ninth Circuit has not required that precedent arise from identical factual circumstances and, consistent with both the *Teague* and qualified immunity contexts, allows for application of existing precedent to new set of facts if differences do not change the "force with which the precedent's underlying principle applies"); *Davis,* 167 F.3d at 500 (stating that habeas review may be granted when "a state court fails to apply a legal principle, enunciated in one or more Supreme Court decisions, to a situation where such application is required by the force and logic of the Court's decision").

Although the Ninth Circuit has interpreted the reasoning in *Solem* (that life without parole is a much more severe penalty than life with the possibility of parole) to be applicable to *Jackson,* our reasoning in that case involved a substantial extension of Supreme Court precedent. First, our decision in *Robtoy* relied solely on a Ninth Circuit case for the proposition that *Jackson* was not limited to the death penalty context. *See Robtoy,* 871 F.2d at 1478. This extension was clearly a new rule, particularly in light of the fact that *Jackson* itself did not strike down the life without parole provisions of the federal kidnapping statute. *Jackson,* 390 U.S. at 585–86, 88 S.Ct. 1209. Second, we extended *Solem,* which specifically limited its holding to the circumstances before it and the Eighth Amendment. *See* 463 U.S. 277, 297 n. 24, 103 S.Ct. 3001, 77 L.Ed.2d 637 (stating that Court does not raise general validity of life sentences without parole, but only considers issue before it, which is "whether, in the circumstances of [the] case and in light of the constitutional principal of proportionality, the sentence imposed on [the] petitioner violates the Eighth Amendment"). In spite of this limitation, we applied *Solem* to a case involving penalties for the exercise of constitutional rights generally. While we do not mean to suggest that the decision in *Robtoy* was erroneous, that decision is not

enough, in itself, to establish that a contrary rule would constitute an "unreasonable application of clearly established federal law as determined by the Supreme Court."

Thus, the district court did not err in concluding that the state court's decision was not contrary to, or involve an unreasonable application of, clearly established Supreme Court law, and that § 2254 habeas relief was unwarranted.

**AFFIRMED.**