**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TYRONE W. MILES,
    *Petitioner-Appellant,*

v.

MICHAEL MARTEL, Warden,
    *Respondent-Appellee.*

No. 10-15633

D.C. No.
1:08-cv-01002-JF

OPINION

Appeal from the United States District Court
for the Eastern District of California
Jeremy D. Fogel, District Judge, Presiding

Argued and Submitted February 15, 2012
Submission Vacated February 21, 2012
Resubmitted September 28, 2012
San Francisco, California

Filed September 28, 2012

Before: Procter Hug, Jr., Betty B. Fletcher, and
Richard A. Paez, Circuit Judges.

Opinion by Judge B. Fletcher

## COUNSEL

Michael S. Romano (argued), Susannah J. Karlson (Certified Law Student), Mills Legal Clinic of Stanford Law School, Stanford, California, for the petitioner-appellant.

Kamala D. Harris, Attorney General of California; Michael P. Farrell, Senior Assistant Attorney General; Brian G. Smiley, Supervising Deputy Attorney General; David Andrew Eldridge (argued), Deputy Attorney General, Office of the California Attorney General, Sacramento, California, for the respondent-appellee.

## OPINION

B. FLETCHER, Circuit Judge:

"[C]riminal justice today is for the most part a system of pleas, not a system of trials. . . . [T]he right to adequate assistance of counsel cannot be defined or enforced without taking account of the central role plea bargaining plays in securing convictions and determining sentences." *Lafler v. Cooper*, 132 S. Ct. 1376, 1388 (2012). Because of "[t]he reality [ ] that plea bargains have become so central to the administration of the criminal justice system . . . ," *Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012), the Supreme Court recently recognized that the Sixth Amendment right to counsel "extends to the plea-bargaining process. During plea negotiations defendants are entitled to the effective assistance of competent counsel." *Lafler*, 132 S. Ct. at 1384 (internal citations and quotation marks omitted); *see also Frye*, 132 S. Ct. at 1407.

Petitioner-Appellant Tyrone Wayland Miles ("Miles") claims that he received ineffective assistance of counsel during plea-bargaining process. He alleges that counsel advised him to reject a plea offer of six years' imprisonment without

alerting him that he was being charged with a crime that would qualify as a "third strike" under California law. He later entered an open plea and was sentenced to a three strikes sentence of twenty-five years to life in prison. Without granting an evidentiary hearing, the California Supreme Court summarily denied his state petition for a writ of habeas corpus. Following the United States Supreme Court's recent decisions in *Lafler v. Cooper* and *Missouri v. Frye*, we reverse the district court's denial of Miles's petition for habeas corpus and remand to the district court to hold an evidentiary hearing on Miles's claims.

## I

Miles grew up in Hanford, California. He is a Navy veteran who deployed to the Persian Gulf three times, including during Operation Desert Storm. He married and had his first child while in the Navy. During that time, however, Miles began to exhibit signs of depression, anxiety, and substance abuse. He received an honorable discharge and returned with his family to Hanford, where his substance abuse and depression worsened. As a result of his drug addiction and erratic behavior, Miles's wife left him and returned with their child to her family in Virginia.

In 1993, while Miles was under the influence of drugs and alcohol, some of his friends asked him to act as a lookout while they robbed a store. Five days later, Miles acted as a lookout to a second robbery. The police caught Miles, and he was charged for his involvement in the robberies together, under the same case number. Miles pled guilty and served three years in prison.

After his release from prison, Miles moved back home to Hanford and lived next door to his parents. He worked various jobs and had two more children with his girlfriend. Miles also remained addicted to methamphetamine and committed several minor criminal offenses. Miles's substance abuse

worsened when his father died in 2003. Miles's financial situation deteriorated when his paychecks began to bounce.

Miles lived in a neighborhood where people often cashed fictitious checks at certain convenience stores. The stores cooperated with this activity, so long as the person passing the check paid a fee and repaid the store later for the fictitious check. Miles also began to cash fictitious checks at these stores, including three checks at King's Gas and Deli Market in November 2004. One of the checks was for $473.76. Miles never repaid the owner.

In June 2005, a Hanford police officer arrested Miles for passing fictitious checks. The police were able to identify Miles's thumb-print on the front of one of the fictitious checks he had cashed at King's. After being confronted with this evidence, Miles admitted that he had passed the check bearing his thumb-print, and admitted that he may have passed other fictitious checks.

The State filed a complaint against Miles that alleged four felony counts: one count of second degree burglary; two counts of forgery occurring on the same day; and another forgery count occurring the following day. The complaint also alleged that Miles had two prior serious felony convictions that qualified as "strikes" under the California Three Strikes Law, Cal. Penal Code §§ 667(b)-(i) and 1170.12. The two prior felony convictions both had the same case number and date of conviction.

Miles initially pled not guilty, and the Superior Court appointed Laurence Meyer ("Meyer") to represent him. The court directed the clerk to send the complaint to Meyer and directed the State to provide Meyer with all discovery documents and evidence. Miles and Meyer met for the first time six days later while walking from the holding area to the pretrial conference and bail hearing. Miles and Meyer met again before another preliminary hearing six days later. Miles never

reached a plea agreement with the State while he was assisted by Meyer. Later, after the State filed an information and formal charges against Miles, the Superior Court appointed James Oliver as Miles's trial counsel.

One month later, while Miles was represented by Oliver, the State offered Miles a plea bargain on the record at another pretrial conference. Under the bargain, in return for pleading guilty to one count and admitting he had two prior strikes, the State would dismiss the remainder of the counts and waive prosecution if there were other outstanding fictitious checks. Additionally, Miles would not be precluded from making a motion at sentencing to have one of the prior strikes dismissed. The trial court explained the rights that Miles would be waiving if he accepted the offer, and stated that although Miles could ask the court to exercise discretion and waive one of the prior strikes, "I'd have to tell you 25 to life is probably what you're going to get." Miles accepted the plea offer.

Before sentencing, the State filed a probation report and Miles submitted a personal letter. At sentencing, the trial court declined to dismiss a prior strike, and sentenced Miles to a "three strikes sentence" of 25 years to life imprisonment for passing a fictitious $474 check. The California Court of Appeal affirmed his sentence, *People v. Miles*, No. F049297, 2006 WL 2257434 (Cal. Ct. App. Aug. 8, 2006) (unpublished), and on October 18, 2006, the California Supreme Court denied direct review.

On January 11, 2008, Miles filed a petition for a writ of habeas corpus with the California Supreme Court, claiming ineffective assistance of counsel during plea bargaining and sentencing. Miles attached a declaration containing factual allegations in support of his claim, and requested the remedy of specific performance of the six-year plea offer.

In his declaration, Miles alleged that when he was charged in the current case he had reason to believe he did not have

two strikes. Miles alleged that when he met Meyer before the pre-trial conference, Meyer relayed an offer for a "plea bargain of six years" but encouraged Miles to allow him to reject the offer and negotiate further. Miles alleged that Meyer never mentioned that he was exposed to a three strikes sentence of 25 years to life. Miles also alleged that Meyer did not inquire about the facts of the case or Miles's prior convictions. Miles alleged that if Meyer had told him his actual sentencing exposure, he would have immediately accepted the six-year plea offer. And Miles alleged that the next time he saw Meyer, before the pretrial hearing six days later, Meyer informed him that the six-year offer was "off the table," and that he could not "do anything about it. It's out of my hands. I didn't know you had strikes."

The California Supreme Court summarily denied Miles's petition on July 9, 2008, stating only: "The petition for a writ of habeas corpus is denied."

Two days later, on July 11, Miles filed a federal petition for writ of habeas corpus, again claiming ineffective assistance of counsel during plea negotiations and at sentencing. After briefing, the district court denied the petition, ruling that Miles was barred from relief on his pre-plea claim of ineffective assistance. The district court also rejected Miles's claim of ineffective assistance at sentencing because Miles did not demonstrate prejudice.

## II

Miles timely appealed. A motions panel of this court granted Miles a certificate of appealability on his claim of ineffective assistance during plea negotiations. *See* 28 U.S.C. § 2253(c).

Preliminarily, the State argues that habeas relief is barred because Miles filed his petition outside of the one-year statute of limitations for federal habeas review. *See* 28 U.S.C.

§ 2244(d). The State argues that Miles's state habeas petition was not timely filed with the California Supreme Court, and if the state petition was not timely it did not toll the federal statute of limitations.[1] Conversely, if Miles's state petition was timely filed with the California Supreme Court, his federal petition is timely.

The Supreme Court addressed California's post-conviction timeliness standards in *Walker v. Martin*, 131 S. Ct. 1120 (2011). As explained by the Court, California courts apply a reasonableness standard to judge whether a state petition for habeas corpus is timely filed. *Id.* at 1125. A petitioner must file without "substantial delay," as "measured from the time the petitioner or counsel knew, or reasonably should have known, of the information offered in support of the claim . . . ." *Id.* (quoting *In re Robbins*, 959 P.2d 311, 317, 322 (Cal. 1998)). Non-capital petitioners have the burden to establish one of the following in order to be timely: (1) absence of substantial delay; (2) good cause for the delay; or (3) that the claim falls within an exception to the bar of untimeliness. *Id.*

Because petitioners may file for post-conviction relief "directly in the California Supreme Court, that court rules on a staggering number of habeas petitions each year." *Id.* at 1125-26 (citation omitted). Generally, most habeas rulings issued by the California Supreme Court are summary denials. Even so, the California Supreme Court does indicate when a habeas petition has been rejected on timeliness grounds. "A summary denial citing [*In re*] *Clark*[, 855 P.2d 729 (Cal. 1993)] and *Robbins* means that the petition is rejected as untimely." *Id.* at 1126. The California Supreme Court has discretion, however, to reach the merits of a state petition, even if untimely.

---

[1]The State raised this argument before the district court but the district court proceeded to the merits.

Here, the California Supreme Court rejected Miles's petition for post-conviction relief without citing *Clark* or *Robbins*. Although this is persuasive evidence, the absence of an express rejection of the application as untimely is not sufficient on its own. We must decide whether Miles filed his state habeas petition "within what California would consider a "reasonable time." *See Evans v. Chavis*, 546 U.S. 189, 198 (2006).

Miles obtained post-conviction counsel within a month of his conviction becoming final. Post-conviction counsel independently assessed and developed his claims, and Miles filed the petition within twelve months. *See In re Spears*, 204 Cal. Rptr. 333, 335-36 (Cal. Ct. App. 1984) (citing *In re Hancock*, 136 Cal. Rptr. 901, 901 (Cal. Ct. App. 1972) (concluding that eighteen months is not a significant delay). The State's reliance on *Clark* to argue that delay should be measured from a point in the process earlier than the termination of direct review is not persuasive. *Clark* is a death penalty case, and California expects petitioners in capital cases to file for habeas relief within 180 days after the due date for a reply brief on direct appeal. *Walker*, 131 S. Ct. at 1125 n.1; *cf. id.* at 1126 (measuring delay in a non-capital case by starting from the termination of direct review). We hold that Miles timely filed his state petition, that the state petition tolled the federal statute of limitations, and that his federal petition is therefore not barred by § 2244(d).

## III

Turning to the merits of Miles's habeas petition, he claims that under *Strickland v. Washington*, 466 U.S. 668 (1984), he was denied effective assistance of counsel during plea bargaining. Miles contends that deficient performance by counsel caused him to forego the opportunity to plead guilty under more favorable terms. He requests an evidentiary hearing so that he can prove his allegations because the state court denied him the opportunity to do so.

## A

We review the district court's factual findings for clear error and the ruling on habeas corpus de novo. *Nunes v. Mueller*, 350 F.3d 1045, 1051 (9th Cir. 2003).

The statutory authority to issue habeas corpus relief for persons in state custody is defined by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is an "unreasonable application" of clearly established federal law[2] if "the state court correctly

---

[2]"[C]learly established Federal law" includes only the Supreme Court's "applicable holdings." *See Carey v. Musladin*, 549 U.S. 70, 74 (2006). But the Supreme Court's holding is not required to be precisely on point—a state court can act contrary to, or can unreasonably apply clearly established Supreme Court law by "ignoring the fundamental principles established by [the Court's] most relevant precedents." *Abdul-Kabir v.*

identifies the governing legal principle . . . but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court's fact-finding process can only be found unreasonable under § 2254(d)(2) when we are "satisfied that any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court's factfinding process was adequate." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004).

"Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011). "[A] habeas court must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 786.

**B**

**1**

In *Lafler v. Cooper*, the habeas petitioner shot at another person several times, hitting her in her buttock, hip, and abdomen as she fled. 132 S. Ct. at 1383. He was charged under state law with assault with intent to murder, among other charges. *Id.* The prosecutor twice offered a plea bargain of 51 to 85 months' imprisonment. In communication with the trial

---

*Quarterman*, 550 U.S. 233, 258 (2007). "Although the Supreme Court's decisions are the focus of the unreasonable-application inquiry, we may look to Ninth Circuit case law as 'persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law.' " *Howard v. Clark*, 608 F.3d 563, 568 (9th Cir. 2010) (quoting *Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000)).

court Lafler admitted guilt and expressed a willingness to accept the offer. *Id.* He ultimately rejected the offer, however, after his attorney convinced him that because the victim had been shot below the waist the prosecution could not prove intent to murder. *Id.* The case went to a jury trial, and after trial Lafler was convicted on all counts and received a mandatory minimum sentence of 185 to 360 months in prison. *Id.*

Following direct review of his appeal by the Michigan state courts, Lafler filed a petition for federal habeas relief, claiming ineffective assistance of counsel. *Id.* The district court granted a conditional writ, ordering specific performance of the original plea agreement as a remedy for the violation of the right to counsel. *Id.* at 1384. The Sixth Circuit affirmed, and the Supreme Court granted certiorari.

**[1]** The Supreme Court held that defendants have a Sixth Amendment right to counsel "that extends to the plea-bargaining process." *Id.* Examining Lafler's claims under AEDPA, the court held that *Strickland* applies, as clearly established law, to the rejection of a plea offer based on deficient advice. *See id.* at 1390. Applying *Strickland*, the Court observed that the parties had stipulated that counsel's performance was deficient. Regarding prejudice, the Court held that Lafler had successfully demonstrated prejudice by showing that "there is a reasonable probability he and the trial court would have accepted the guilty plea. In addition, as a result of not accepting the plea and being convicted at trial, [Lafler] received a minimum sentence [over three] times greater than he would have received under the plea." *Id.* at 1391 (citation omitted). This satisfied the *Strickland* test for ineffective assistance during plea bargaining.

The Court vacated the Sixth Circuit's remedy of specific performance, and instead remanded the case with instructions to order the State to reoffer the plea agreement, thus allowing the state trial court to "exercise its discretion" in resentencing. *Id.*

**2**

In *Missouri v. Frye*, the defendant was charged with the class D felony offense of driving with a revoked license. 132 S. Ct. at 1404. The maximum term of imprisonment for that charge is four years. The prosecution sent two written plea offers to Frye's counsel, the second of which would have reduced the charge to a misdemeanor and recommended a 90-day sentence. Counsel let both offers expire without communicating anything to Frye. Before Frye's preliminary hearing he was again arrested for driving with a revoked license. Frye subsequently entered a plea of guilty without a plea agreement. The trial judge sentenced him to three years in prison. *Id.* at 1404-05.

Frye filed for postconviction relief in state court, alleging that his counsel's failure to inform him of the state's plea offer violated his right to effective assistance of counsel. The trial court denied the motion, but the Missouri Court of Appeals reversed and granted relief based on *Strickland*. The state court ordered Frye's guilty plea withdrawn so he could proceed to trial or agree to plead guilty to any offer the prosecutor deemed appropriate. *Id.* at 1404-05. The Supreme Court granted certiorari.

**[2]** The Court held that defendants are entitled to effective counsel during plea bargaining, even where a plea offer is rejected. *Id.* at 1405-08. Applying *Strickland*, the court held that Frye's counsel was ineffective because he failed to communicate the formal plea offer. *Id.* at 1408-09. The Court described the test for prejudice as follows:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of coun-

sel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, . . . [and] that the end result of the criminal process would have been more favorable . . . .

*Id.* at 1409. The Court remanded to the state court for it to determine if Frye could show prejudice, especially in light of his intervening arrest for the same offense while the current charges and plea offer were pending. *Id.* at 1411.

### C

This case fits squarely between *Lafler* and *Frye*. As in *Lafler*, a habeas case subject to AEDPA like this one, "the favorable plea offer was reported to the client but, on advice of counsel, was rejected." *Lafler*, 132 S. Ct. at 1383.[3] And like *Frye*, "after the [plea] offer lapsed the defendant still pleaded guilty, but on more severe terms." *Id.*[4] Applying clearly estab-

---

[3]In *Lafler*, the Court held that *Strickland* is the appropriate "clearly established federal law" to apply to claims of ineffective assistance of counsel in plea bargaining, even when the claim relates to a foregone plea. *See Lafler*, 132 S. Ct. at 1384. By applying this holding in *Lafler*, a habeas petition subject to AEDPA, the Court necessarily implied that this holding applies to habeas petitioners whose cases are already final on direct review; *i.e.* that the holding applies retroactively. This holding is also consistent with our prior circuit precedent that applied *Strickland* in the plea-bargaining context. *See, e.g.*, *Nunes*, 350 F.3d at 1051-53 (applying *Strickland* to a foregone plea bargain); *Turner v. Calderon*, 281 F.3d 851, 879-80 (9th Cir. 2002) (citing *Strickland and Hill v. Lockhart*, 474 U.S. 52 (1985)); *United States v. Blaylock*, 20 F.3d 1458, 1465-66 (9th Cir. 1994)

[4]The district court, ruling without the benefit of *Lafler* and *Frye*, rejected Miles's habeas claim based on a lack of constitutional infirmity in his subsequent guilty plea. But based on *Lafler* and *Frye*, neither a trial free of constitutional flaw nor a voluntary and intelligent guilty plea "wipes clean any deficient performance by defense counsel during plea bargaining." *Lafler*, 132 S. Ct. at 1388 (discussing a subsequent trial); *see Frye*, 132 S. Ct. at 1405-08 (discussing the application of *Strickland* where the defendant subsequently pleads guilty to less favorable terms).

lished federal law, we hold that Miles has alleged facts estab-
lishing a colorable or prima facie case of ineffective
assistance of counsel. The state court unreasonably applied
*Strickland* when it summarily denied Miles's claim.

**1**

Under *Strickland v. Washington*, a criminal defendant may
demonstrate ineffective assistance of counsel by establishing
both that counsel's performance was deficient and that the
defendant was prejudiced by the deficiency. *Strickland*, 466
U.S. at 687. A habeas petitioner must show that the state court
unreasonably determined that the petitioner failed to show
both deficient performance and prejudice. *Bell*, 535 U.S. at
698-99; *see Richter*, 131 S. Ct. at 785 (holding that review of
the state court's decision is deferential).

The test for deficient performance is "whether counsel's
assistance was reasonable considering all the circumstances."
*Strickland*, 466 U.S. at 688. "Because of the difficulties inher-
ent in making the evaluation, a court must indulge a strong
presumption that counsel's conduct falls within the wide
range of reasonable professional assistance; that is, the defen-
dant must overcome the presumption that, under the circum-
stances, the challenged action might be considered sound trial
strategy." *Id.* at 689 (internal quotation marks and citation
omitted).

In asserting deficient performance, Miles alleges that his
pre-trial counsel, Meyer, never informed him that he was
exposed to a three strikes sentence. Miles further alleges that
Meyer did not even realize the sentencing exposure that Miles
faced when Meyer advised Miles that the six-year offer was
too high and that Miles should allow him to negotiate.

This is not a close case—according to Miles's allegations,
Meyer performed deficiently. The complaint alleges two prior
felony convictions against Miles and provides the statutory

reference to the three strikes law. The possibility that Miles could be sentenced to at least 25 years to life is clear and explicit on the face of the complaint. In spite of this obvious risk, Miles alleges that Meyer told him that an offer of six years was "too much," and stated that he thought Miles could get a better offer, never mentioning the possibility of a three strikes sentence.

**[3]** Taking the allegations as true, we conclude defense counsel's failure to warn Miles was not only erroneous, but egregious, considering the discrepancy between the plea offer and Miles's sentencing exposure. *See Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) ("Though a mere inaccurate prediction, standing alone, would not constitute ineffective assistance, the gross mischaracterization of the likely outcome presented in this case, combined with the erroneous advice on the possible effects of going to trial, falls below the level of competence required of defense attorneys.") (citations omitted). Constitutionally effective counsel must competently assess a defendant's sentencing exposure and disclose the exposure to the defendant. *See Hill*, 474 U.S., at 56-58*; Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) ("Counsel cannot be required to accurately predict what the jury or court might find, but he can be required to give the defendant the tools he needs to make an intelligent decision."); *see also Frye*, 132 S. Ct. at 1408 (noting that defense counsel must "promptly communicate and explain" plea offers under the professional rules in numerous jurisdictions). Simply stated, Meyer had a duty to understand that the complaint facially alleges two prior strikes, and a duty to convey the possible consequences to Miles. Meyer's failure to read the complaint and communicate its contents to Miles before advising him to reject a plea offer falls below an objective standard of reasonableness under *Strickland*.

In fact, the State's primary response to Miles's claim is that his allegations are implausible, and that it is "extremely unlikely" that Meyer could possibly have performed so defi-

ciently. In making this argument, the State basically concedes that if Miles's allegations are true he has stated a prima facie claim of deficient performance. Nonetheless, the State argues that the state court reasonably dismissed Miles's petition for relief on the basis of factual implausibility. We disagree with both of the State's assertions: Miles's allegations are not factually implausible, and the state court would have been unreasonable to reject his petition on those grounds.

Upon review of a petition for post-conviction relief, the California Supreme Court accepts the factual allegations of a petition as true and determines whether the facts alleged establish a prima facie entitlement to relief. Cal. R. Ct. 8.385(d). If the petitioner alleges facts showing a prima facie case, "the court must issue an order to show cause," and eventually the court may order an evidentiary hearing. *Id.* In limited circumstances, the California Supreme Court may reject a petition on the basis that it is not credible. *See Durdines v. Superior Court*, 90 Cal. Rptr. 2d 217, 222 n.9 (Cal. Ct. App. 1999) (discussing *In re Alvernaz*, 830 P.2d 747, 761 (Cal. 1992)).

The State argues that Miles's allegations are unbelievable given the following: the unlikelihood that Miles would not ask what the sentencing exposure was before allowing his attorney to negotiate; the fact that Miles never mentioned the first offer to his trial attorney when negotiating the second offer; and because it was unthinkable that Meyer would fail to inspect the charging document.

In support, the State relies upon *Perez v. Rosario*, 459 F.3d 943 (9th Cir. 2006), where the court deferred to the state court's finding—without an evidentiary hearing—that the petitioner's claims completely lacked credibility. *Rosario*, however, is easily distinguished from this case. In *Rosario*, the petitioner submitted two declarations that not only contradicted each other, but also contradicted the defense theory and alibi witnesses presented at trial. The petitioner also changed

the allegations in his second declaration in order to respond to arguments raised by the state in its response. *Id.* at 952. None of those facts are present here. Miles has not submitted a declaration containing any internal or external inconsistencies, much less any obvious inconsistencies or contradictions. The absence of contradictory self-testimony is dispositive. We hold that in the absence of any gross inconsistencies, *Rosario* simply does not apply.

Turning to Miles's declaration, we conclude that it is plausible. The particularized facts that he alleges are not presumptively incredible. In fact, it seems entirely believable that the prosecutor would offer Miles a six-year sentence for pleading guilty; a six-year offer is what Miles would have received for a second-strike offense on a single felony count of passing a fictitious check. *See* Cal. Penal Code § 476 (defining the passing of fictitious checks as forgery); *Id.* § 667(e)(1) (doubling the term otherwise provided for a second strike). The prosecution eventually allowed Miles to plead guilty to a single felony count of passing a fictitious check, but as a third-strike offense. Regarding the rest of the State's arguments, whether or not Meyer inspected the charging document before giving advice, and whether or not Miles asked about his sentencing exposure, are plausible facts and must be settled at an evidentiary hearing. *Cf. Nunes*, 350 F.3d at 1056 (holding that the state court's decision was objectively unreasonable because it drew inferences and made credibility determinations when it claimed to be determining prima facie sufficiency).

Next, the State argues that the state court reasonably rejected Miles's claim because Meyer would have potentially been ineffective if he had advised Miles to plead guilty without verifying whether the prior strikes were valid. The State contends that Meyer did not receive the complaint until the morning that he first met Miles, and that he would have needed more time to investigate. This argument misses the point. If Miles's allegations are true, Meyer's failure was not necessarily his recommendation to reject the State's six-year

offer, but his failure to understand Miles's sentencing exposure and to disclose that exposure to Miles when advising him on the plea offer.

Although the validity of Miles's prior strikes may have been uncertain at the time of the plea offer, there is no uncertainty as to what the State alleged in the complaint and no uncertainty as to the sentencing exposure for a potential third strike. The burden on counsel here is no more than to advise that the charges expose the defendant to a presumptive sentence of 25 years to life in prison if he is convicted and the strikes are valid.

Finally, the State relies upon *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009), to argue that Miles's allegations do not entitle him to relief under AEDPA because there is no prior Supreme Court case that "squarely established" any specific legal rule that defense counsel violated. We disagree. Counsel's explanation of a plea offer must be sufficient to permit the defendant to make a reasonably informed decision to accept or reject the offer. *Hill*, 474 U.S. at 56-58 (applying *Strickland* in the context of plea bargaining).[5] The application of *Strickland* in the plea bargaining process, and the requirement for counsel to provide advice "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), are settled law, and have been previously applied in this circuit. *See Nunes*, 350 F.3d at 1051-53 (applying *Hill* and *Strickland* under AEDPA

---

[5]Under prevailing ABA standards, which are highly relevant under *Strickland*, 466 U.S. at 688, a lawyer must communicate with the client about plea offers and advise the client candidly and competently so that the client may make an informed decision. *See* ABA Standards for Criminal Justice, Prosecution and Defense Function 4-4.1(a) (3d ed. 1993) (defense counsel is obligated to investigate "facts relevant to the merits of the case and the penalty in the event of conviction"); *Id.* at 4-5.1(a) ("After informing himself or herself fully on the facts and the law, defense counsel should advise the accused with complete candor concerning all aspects of the case, including a candid estimate of the probable outcome.").

to hold that counsel must communicate a plea offer so that the petitioner can make an informed decision); *cf. Blaylock*, 20 F.3d at 1465-66 (applying *Strickland* on direct review to hold that counsel must communicate a plea offer to the defendant).

**[4]** Miles has stated a prima facie claim of deficient performance. We can think of no strategic reason for defense counsel to fail to apprise Miles of his sentencing exposure. Moreover, we also cannot think of any other hypothetical reasons that the state court might have reasonably had to reject Miles's allegation of deficient performance. *See Richter*, 131 S. Ct. at 784.

**2**

Under the *Strickland* inquiry, the test for prejudice "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. As articulated in *Lafler v. Cooper*, to show prejudice in a foregone plea bargain case

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

132 S. Ct. at 1385.

**[5]** Miles's allegations demonstrate a prima facie claim of prejudice. From his allegations, the objective facts in the record, and his eventual acceptance of a plea bargain, it is undisputed that Miles consistently showed that he was not

interested in contesting his guilt but rather wanted to negotiate a plea. Further, the disparity between the plea offer and the potential sentence he would be exposed to on a third strike is strong evidence that his allegations are plausible. *See Id.* at 1391. And there are no facts in the record that suggest that the prosecutor would have reneged on a completed plea bargain or that the state court would not have accepted the plea bargain.

The State argues that the state court could have reasonably based its summary rejection of Miles's claim on his failure to affirmatively prove prejudice. The State claims that Miles did not demonstrate in state court that the prosecutor would have maintained the six-year plea offer, and on those grounds the state court decision rejecting Miles's claim is reasonable. This argument fails for two reasons.

First, the state petition inescapably implies that the prosecution would not have withdrawn the plea offer had Miles accepted it. In his state petition, Miles extensively discusses *Strickland* prejudice. Miles specifically discusses subjective and objective evidence that demonstrate that he would have accepted the offer, as well as several reasons why it was reasonably likely that the trial court would have approved the plea agreement. All of these detailed arguments necessarily allege that the prosecutor would have honored the bargain.[6]

Second, to state a prima facie claim of ineffective assis-

---

[6]In fact, in *Lafler*, where the Supreme Court granted the petition for habeas relief under *Strickland*, the petitioner did not allege in his habeas petition that the prosecutor would not have withdrawn the plea, or even that the state court would have accepted its terms. *See* Petition for Writ of Habeas Corpus at 14-16, *Cooper v. Lafler*, No. 2:06-cv-11068 (E.D. Mich. Mar. 13, 2006), ECF No. 1; *cf. Cooper v. Lafler*, 376 F. App'x 563, 571-73 (6th Cir. 2010) (granting relief without discussing whether the prosecution would have withdrawn the agreement); *Cooper v. Lafler*, No. 2:06-cv-11068, 2009 WL 817712, at *7-9 (E.D. Mich. Mar. 26, 2009) (same).

tance during plea bargaining, the petitioner does not specifically need to allege that the prosecutor would have adhered to the plea offer unless the surrounding circumstances plausibly suggest otherwise. The burden to show that the prosecution would have maintained the plea offer is, in part, a result of the facts in *Missouri v. Frye*. There, the defendant was arrested for the same conduct at issue in his plea proceedings during the period when the prosecutor's plea offer was still on the table. The Court required him to demonstrate that it was reasonably likely that the prosecution would not have withdrawn the offer and that the trial court would have accepted the agreement in light of the intervening circumstance of his arrest. *Frye*, 132 S. Ct. at 1404, 1410-11. In contrast, there are no circumstances here that suggest the possibility that the prosecutor might have withdrawn the offer had Miles accepted it. The State does not even mention this possibility in its opening brief, and there are no facts, rulings, or intervening criminal acts in the record that might have prompted the prosecutor to reevaluate the bargain.

## IV

Having established that the state court unreasonably applied federal law when it summarily rejected Miles's claim of ineffective assistance of counsel, we turn to the issue of whether Miles is entitled to an evidentiary hearing in federal court. Such a hearing is necessary for Miles to vindicate his claim and to be entitled to habeas relief.[7]

---

[7]At the outset, we note that the Court explicitly envisioned the possibility of an evidentiary hearing in the course of demonstrating a claim of ineffective assistance of counsel during plea bargaining. In *Lafler*, the Court noted that an evidentiary hearing may sometimes be required to show prejudice. *See* 132 S.Ct. 1389 ("In this situation the court may conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea.").

**[6]** "For a federal habeas court to grant an evidentiary hearing on an ineffective assistance claim, . . . a petitioner must only show a 'colorable claim of ineffective assistance.' " *Fairbank v. Ayers*, 650 F.3d 1243, 1251 (9th Cir. 2011) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007)). "Although the standard required to obtain an evidentiary hearing is less stringent than that required to prove a *Strickland* claim, AEDPA deference still guides our decision." *Id.* As the Supreme Court explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate. It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.

*Landrigan*, 550 U.S. at 474 (citations and footnote omitted).

Miles has demonstrated a "colorable claim of ineffective assistance" and the state court record does not refute his factual allegations. But we must contend with *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), which "changed the aperture for consideration of new evidence" in federal habeas courts. *Stokley v. Ryan*, 659 F.3d 802, 809 (9th Cir. 2011). *Pinholster* emphasized that, under AEDPA, the state courts are to bear primary responsibility for adjudicating habeas claims brought by state prisoners. In the Court's words, AEDPA "demonstrate[d] Congress' intent to channel prisoners' claims first to the state courts." *Pinholster*, 131 S. Ct. at 1398-99. With that intent in mind, the Court held that "review under § 2254(d)(1)

is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

**[7]** We conclude that we are permitted to remand for an evidentiary hearing for the purpose of reviewing Miles's claim under § 2254(d). We reach this conclusion based on a close reading of *Pinholster* and the various concurring and dissenting opinions in that case. The majority opinion in *Pinholster* states that "[s]ection 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief." *Id.* Under *Pinholster*, then, § 2254(e)(2) permits a federal evidentiary hearing when: (1) a state court decision is contrary to, or an unreasonable application of, clearly established federal law; and (2) the petitioner was diligent in presenting evidence in state court.

**[8]** Miles was diligent in state court. *See Williams v. Taylor*, 529 U.S. 420, 437 (2000) ("Diligence . . . require[s] in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law."). He alleged a prima facie case of ineffective assistance and the state court summarily rejected his claims. Because the state court rejected Miles's claims because he did not make a prima facie showing, the court did not order the filing of a return and a traverse nor make a determination of whether an evidentiary hearing was required. *See* Cal. R. Ct. 8.386 *et. seq.*

**[9]** The California Supreme Court, in summarily rejecting Miles's prima facie claim of ineffective assistance, unreasonably applied clearly established federal law under § 2254(d)(1). While ordinarily diligence may require a petitioner to seek an evidentiary hearing in state court in the manner prescribed by state law, because Miles never reached the stage of the state proceeding at which an evidentiary hearing could be requested, he has not shown a lack of diligence. Under § 2254(e)(2), AEDPA permits us to remand for an evidentiary hearing for purposes of resolving the remaining fac-

tual disputes of Miles's habeas claim because he was diligent in state court.

The concurring opinions of Justice Alito and Justice Breyer also support our conclusion. Justice Alito stated that he thought an evidentiary hearing in federal court was proper under § 2254(e)(2) when the petitioner makes a diligent effort to produce evidence in state court. *Pinholster*, 131 S. Ct. at 1411 (Alito, J., concurring in part and concurring in the judgment). Further, he agreed with Justice Sotomayor's dissent that "when an evidentiary hearing is properly held in federal court, review under 28 U.S.C. § 2254(d)(1) must take into account the evidence admitted at that hearing." *Id.*[8]

Likewise, Justice Breyer wrote:

> If the state courts reject the claim, then a federal habeas court may review that rejection on the basis of the materials considered by the state court. If the federal habeas court finds that the state-court decision fails (d)'s test (or if (d) does not apply), then an (e) hearing may be needed. For example, if the state-court rejection assumed the habeas petitioner's facts (deciding that, *even if* those facts were true, federal law was not violated), then (after finding the state court wrong on a (d) ground) an (e) hearing might be needed to determine whether the facts alleged were indeed true.

*Id.* at 1412 (Breyer, J., concurring in part and dissenting in part). This is exactly what happened here. The state court

---

[8]We also note that the majority opinion never responded to one of Justice Sotomayor's statements in dissent: "I assume that the majority does not intend to suggest that review is limited to the state-court record when a petitioner's inability to develop the facts supporting his claim was the fault of the state court itself." *Pinholster*, 131 S. Ct. at 1417 n.5 (Sotomayor, J., dissenting).

unreasonably ruled that even if Miles's allegations were true, he failed to make a prima facie showing of ineffective assistance. Because the state court was wrong on a (d)(1) ground, an (e) hearing is needed to determine whether Miles's allegations are in fact true.[9]

Thus, while *Pinholster* is often read as creating a bright-line rule that evidence from federal courts may never be considered in the course of § 2254(d)(1) review, the majority opinion confirms that § 2254(e)(2) continues to have force and permit federal courts to hold evidentiary hearings in limited circumstances. Moreover, the justices who joined the judgment agree that where a diligent petitioner was unable to present evidence in the state court because of the state court's error, the petitioner is not barred from an evidentiary hearing in federal court.

**[10]** We hold that under the circumstances presented here, remand for an evidentiary hearing is not only permitted but required.

---

[9]Alternatively, Miles is entitled to an evidentiary hearing because the state fact-finding process was defective under § 2254(d)(2). *See Pinholster*, 131 S. Ct. at 1398-99 (limiting review under § 2254(d)(1)—but not limiting review under § 2254(d)(2)—to the state record). In *Nunes v. Mueller* we concluded that the state court unreasonably rejected the petitioner's habeas claim under § 2254(d)(1) and (2) when the state court rejected a petition alleging a prima facie claim of ineffective assistance of counsel without affording any fact-finding. *Nunes*, 350 F.3d at 1054-55. Here, like in *Nunes*, the state court claimed to take Miles's petition at face value and to review it for sufficiency. *See* Cal. R. Ct. 8.385(d). Reviewing for sufficiency, the state court rejected a prima facie case of ineffective assistance of counsel without any fact-finding. This is an "unreasonable determination of the facts" under § 2254(d)(2) because "the state court should have made a finding of fact but neglected to do so." *Taylor*, 366 F.3d at 1000; *see id.* at 1001 (holding that the state court's factual determinations are unreasonable where "the overlooked or ignored evidence [is] highly probative and central to petitioner's claim").

# V

**[11]** Whether Miles's allegations are true or not is not known. His allegations are plausible, however, and if true they state a claim for habeas relief. Accordingly, we reverse the district court's denial of Miles's habeas petition, and remand for an evidentiary hearing in district court.

**REVERSED AND REMANDED FOR AN EVIDENTIARY HEARING**